## Thomas v. Matthews.

*Breach of contract — Burden to show performance or tender — Stipulations for delay in performance — Facts necessary to maintain action — Contract controlling action of director of corporation — Against public policy and void, when.*

1. Where a plaintiff seeks to recover damages for breach of contract, the burden is upon him to show either substantial performance or tender of performance of the conditions on his part to be performed.

2. Where a contract provides for delay in the performance of any part thereof for a specified time, and further provides that performance shall not be required until the reasons stated in the contract for the delay in performance have ceased to exist, no action can be maintained upon such contract at the end of the specified period, unless it further appears that the reasons for delay no longer exist or that they still exist through fault of the defendant.

3. A contract made by a director of a corporation with reference to his official action as such, based upon a consideration personal to himself, is against public policy and void.

4. A contract made by a director of a corporation that limits or restricts him in the free exercise of his judgment or discretion, or that places him under direct and powerful inducements to disregard his duties to the corporation, its creditors and other stockholders in the management of corporate affairs, is against public policy and void.

(No. 14899 — Decided February 29, 1916.)

ERROR to the Court of Appeals of Clark county.

On the 31st day of December, 1912, Mabel T. Matthews filed a petition in the common pleas court of Clark county against William S. Thomas, to which the defendant filed a motion to make the same more definite and certain.

This motion was sustained, and on March 1, 1913, an amended petition was filed, in which the plaintiff asked a judgment against the defendant in sums equal to an additional dividend which she claimed should have been declared on stock in The Thomas Manufacturing Company, a corporation organized under the laws of Ohio, for the year 1910, and for the whole amount of a dividend of seven per cent. which she claimed should have been declared by the directors of that company in the year 1911.

The petition avers, among other things, that the company earned ten per cent. on its capital stock in the year 1910, and declared and paid a dividend of only eight per cent.; that in the year 1911 it earned seven per cent. on the capital stock of the company, but did not declare or pay any dividend in that year.

The claim of the plaintiff against the defendant for dividends not declared or paid in 1910 and 1911 is predicated upon a contract, which reads in words and figures following, to-wit:

"SPRINGFIELD, OHIO, *April 29, 1905.*

"The heirs of John H. Thomas, deceased, having settled and adjusted various matters of controversy and agreed upon a division of the balance of said estate as indicated upon the sheets hereto attached, which are identified by the signatures of A. N. Summers and J. E. Bowman, as part of said adjustment, it is agreed as follows.:

"First. Said heirs will give the executors of said estate receipts for their respective distributive shares as heretofore ordered distributed by the Probate Court of Clark county. Said heirs hereby ratify the action of said executors in handing over to Mabel Matthews, W. S. Thomas and Findlay B. Thomas, certain assets intended for them, viz.:

"To Mabel Matthews the following notes:

| | |
|---|---|
| A. C. Black................ | $6,000.00 |
| Wm. A. and M. Buffembarger.. | 1,500.00 |
| Moores & Co. and H. H. Moores | 7,500.00 |
| Ed. and A. J. Ryan.......... | 5,000.00 |
| J. H. Thomas .............. | 1,817.00 |
| Thomas Mfg. Co. notes....... | 36,635.98 |

"To Findlay B. Thomas the following notes:

| | |
|---|---|
| J. S. Crowell................ | $7,500.00 |
| R. F. and F. A. Hayward...... | 300.00 |

E. and M. Harshman......... 4,000.00
Emma A. Reed et al.......... 3,000.00
G. W. and K. Sheaff.......... 1,000.00
J. H. Thomas................ 7,868.00
Thomas Mfg. Co. notes........24,917.96

"To W. S. Thomas the following notes:

H. R. Geiger................. $3,100.00
J. A. Hemphill.............. 2,500.00

"And they agree that no further accounting shall be had in the probate court, unless assets are discovered which are not covered or considered in said adjustment; and they further agree that, if new liabilities of said estate are discovered, they will each contribute one-fourth to the payment of same.

"Second. It is agreed that so long as either Mrs. Summers or Mrs. Matthews hold at least $10,000 par value of stock in The Thomas Manufacturing Company, the present salaries of W. S. Thomas and H. H. Bean shall not be increased without their consent, excepting for a year in which the company earns and pays a dividend of at least six per cent., and further that for each one per cent. of dividend above six per cent. earned and paid in any year there may be for such year an increase of not more than ten per cent. in one or both of said salaries; not to exceed, however, in any year, a salary of $10,000 for W. S. Thomas and $5,000 for H. H. Bean; also that whenever the net earnings of the company in any year will permit a dividend of at least four per cent.,

a dividend of the largest whole per cent. permitted by the entire net earnings shall be declared and paid, unless otherwise agreed; but that no such dividend need be paid in the present or in the next six years during which the company has unusual payments to make to the heirs of the J. H. Thomas estate, the payment of any such dividends being postponed until after said last mentioned payments are made.

"It is further agreed that neither by additional salaries nor by any other means resorted to for such purpose shall the future net earnings of the company be absorbed so as to prevent dividends, without the consent of Mrs. Summers and Mrs. Matthews so long as they or either of them remain a stockholder of said company in at least the amount above named.

"It is further agreed that Mrs. Summers and Mrs. Matthews so long as they remain stockholders in said company in any amount shall annually receive a statement of the company's condition and transactions in detail as full as the one given them February 1 of this year; and it is further agreed that no mortgage shall be placed upon the company's property without their consent.

"Third. Mrs. Summers and Mrs. Matthews shall each receive a complete detailed inventory of the estate held in trust for Findlay B. Thomas, the same to be delivered within a reasonable time after the execution hereof.

"Fourth. The trust deed given W. S. Thomas for the Whiteley property shall not be acted upon without consent of all parties thereto, and upon de-

mand of any party thereto at any time, W. S. Thomas, the trustee in said deed of trust, shall reconvey to such party a one-fourth interest in said property.

"Fifth.   No part of the fees that may be charged by J. E. Bowman for services in these adjustments shall be charged to The Thomas Manufacturing Company, or to the estate of J. H. Thomas.

"Sixth.   Clause 2 hereof shall be binding only on W. S. Thomas, and after the expiration of the six-year period above referred to the provisions of Section 2 hereof shall be binding on W. S. Thomas only so long as he remains in the management of the affairs of The Thomas Manufacturing Company, or through his ownership of stock therein is able, with the assistance of other parties hereto to control the management thereof.

"Seventh.   During the six-year period above referred to neither Mrs. Summers nor Mrs. Matthews shall institute any legal proceedings to dissolve The Thomas Manufacturing Company if in her opinion the letter and spirit of this agreement has been faithfully kept by W. S. Thomas.

"Eighth.   As to the dividends that may be declared during the next six years the same shall be payable in the year 1911, excepting as to the excess of any such dividend above 4 per cent. the company shall have the option either to pay the same in cash, or to issue therefor preferred stock at par, bearing 6 per cent., cumulative dividends, and redeemable by the company at par at the end of five (5) years after its issue; provided in case of such preferred stock being issued to any stockholder,

the same shall be issued to all stockholders in the same proportion and on the same terms. Such option shall be exercised on or before the first day of November, 1911, and if preferred stock is to be issued the same shall be issued so soon as the necessary steps can reasonably be taken to issue the same.

"Witness the signatures of the parties on the date above named.

> "WILLIAM S. THOMAS,
> "NELLIE T. SUMMERS,
> "MABEL T. MATTHEWS,
> "WILLIAM S. THOMAS,
> *"Trustee of Findlay B. Thomas."*

The amended petition further avers that The Thomas Manufacturing Company was, at the date of the contract, indebted to W. S. Thomas and C. E. Thomas, as executors of the John H. Thomas estate, in the sum of $100,000, and to plaintiff and other legatees under the will of John H. Thomas, in a sum in excess of $70,000, which indebtedness was then past due. It is further averred that the indebtedness of the company to the executors had arisen through their unlawfully loaning the assets of John H. Thomas to The Thomas Manufacturing Company. The amended petition further avers that this plaintiff and Nellie T. Summers, her sister, were demanding payment by The Thomas Manufacturing Company of all the money due and owing by it to these executors, and that the corporation should be dissolved; that W. S. Thomas, who was the president of the company and the owner of a

large number of shares of its corporate stock, objected to the corporation making immediate payment, for which reason the plaintiff and her sister consented to an extension of the time for the payment of said sums, released the executors, as executors, from the payment of the same and agreed to take in lieu thereof the notes of The Thomas Manufacturing Company, whereby the said indebtedness was distributed over a period of five years.

To this amended petition the defendant filed a general demurrer, which was overruled by the court. Thereupon the defendant filed an answer, admitting the execution of the written agreement dated April 29, 1905, admitting that the net earnings of The Thomas Manufacturing Company in the year 1910 were equal in amount to ten per cent. of its capital stock and that the earnings in the year 1911 were equal in amount to seven per cent. of its stock, but denying that such earnings permitted a dividend of four per cent. or any other per cent. in excess of eight per cent. in the year 1910, for the reason that said net earnings were not of a character that could be distributed by way of dividends, but consisted of accounts due the company and accretions to its assets made necessary for the successful conduct of its business; averring further that the company was largely indebted, that the indebtedness mentioned in the petition and contract, which was paid as required to the plaintiff and her sister, was in large part borrowed from other persons and banks in order to make such payments, and that said company has large indebtedness in

addition thereto; that all of the income of the company that could be spared from the conduct of its business was applied to the reduction of its indebtedness; and that no dividend could have been declared or paid without an injustice to creditors and injury to its stockholders. Defendant further avers that the money which plaintiff would have received had dividends been declared and paid, had all been used for her benefit in the preservation of the business and prosperity of the company by reduction of its debts, and for this reason she had sustained no damage by reason of the failure of the company to declare and pay dividends.

For a second defense the defendant avers that at the time of the execution of the contract, and for some years prior thereto, he was one of a board of five directors of said company; that he had no control over the other directors of the company; that he could not at any time have procured the declaration of dividends by the company beyond those dividends that were declared; that by reason of the large indebtedness of the company and the state of its business no dividends such as claimed by the plaintiff ought to have been declared, having due regard for the rights of creditors and stockholders, and that neither he nor any other member of the board of directors could have voted in favor of declaring further dividends without a wilful violation of his duty as such director; and that the plaintiff and her sister, during the years in question, failed and refused to participate in the election of directors of said company or to assist the defendant in any way to control the action of its

board of directors in the premises, and that the management and control of the affairs of said company ever since the date of said contract has resided in its board of directors and not in this defendant.

For a third defense the defendant avers that notwithstanding the provisions of the contract, and during the six-year period covered thereby, the plaintiff, in conjunction with her sister, in March, 1909, wrongfully began legal proceedings to dissolve The Thomas Manufacturing Company, and prosecuted such suit to final judgment in the circuit court of Clark county, Ohio; that said suit was pending at the time of the commencement of this suit and had only been finally adjudicated against the plaintiff and her associates, as plaintiffs in that suit, within a few days preceding the filing of this answer; and that at the time of the filing of the answer no entry of the judgment of the circuit court had yet been made on the journal of that court.

Defendant avers that these proceedings to dissolve said company greatly embarrassed the company in the conduct of its business and the expense of defending said proceedings greatly increased the cost of carrying on the business of the company, that its credit was greatly impaired and its earnings reduced from what they otherwise would have been, and that for these reasons it was impossible for the company to declare and pay dividends.

The plaintiff for reply denied specifically the allegations in the several defenses of the answer, except such as were admissions of the averments in the petition, and averred that the defendant re-

fused to act with her or her sister or their representatives on the board of directors in the management of said corporation, and that they then were and at all times had been willing to unite with the defendant in the control of said corporation and the declaring and paying of the dividends provided for in said contract.

Upon the issue joined by the pleadings the jury returned a verdict in favor of the defendant, and judgment was rendered thereon. Error was prosecuted to this judgment in the court of appeals of Clark county, which court reversed the judgment of the common pleas court, for error in the charge to the jury with reference to the validity of this contract and with reference to the question of co-operation of the plaintiff and her sister with the defendant in the control of the company's business, in that the trial court did not charge the jury, "in respect to the readiness and willingness of W. S. Thomas to declare dividends, that the same was communicated to the plaintiff and that she declined to cooperate."

This proceeding in error is prosecuted in this court to reverse the judgment of the court of appeals reversing the judgment of the common pleas court.

*Mr. Paul C. Martin* and *Mr. J. E. Bowman,* for plaintiff in error.

*Mr. Lawrence Maxwell* and *Mr. A. N. Summers,* for defendant in error.

Donahue, J.   If it be true, as pleaded in the petition, that W. S. Thomas entered into this agreement for the declaration and payment of dividends by The Thomas Manufacturing Company in consideration that he be released from personal liability as executor of the estate of John H. Thomas, for money unlawfully loaned by him as executor to The Thomas Manufacturing Company, or for any other consideration personal to himself, then this agreement is against public policy and void.

It is the settled law of this state that directors must manage the corporate business with a view solely to the common interest, and cannot directly or indirectly derive personal profit or advantage from their position which is not shared by all the stockholders.

The maxim, *uberrima fides,* of the civil law applies without limitation or restriction to their relation to the corporate property and business.   They occupy a strictly fiduciary relation to the stockholders and are accountable to them on principles governing that relationship.   *Rouse, Trustee,* v. *Merchants' National Bank,* 46 Ohio St., 493, 502; *Larwill* v. *Burke et al.,* 66 Ohio St., 683, affirming *Larwill* v. *Burke et al.,* 19 O. C. C., 449; *Peter* v. *The Union Mfg. Co. et al.,* 56 Ohio St., 181; *Greenville Gas Co.* v. *Reis et al.,* 54 Ohio St., 549, 558; Elliott on Private Corporations (4 ed.), Sections 502, 503; 8 Thompson on Corporations (2 ed.), Sections 1215, 1216; *Warren* v. *Para Rubber Shoe Co.,* 166 Mass., 97, 104, and 1 Morawetz on Private Corporations (2 ed.), Section 517.

This contract does not in terms release W. S. Thomas from liability for any funds loaned by him as executor to The Thomas Manufacturing Company. It does provide that the heirs of the John H. Thomas estate will give the executors of that estate receipts for their respective distributive shares as theretofore ordered distributed by the probate court of Clark county. That is the ordinary and natural thing to do where distribution is made to heirs under the order and directions of the court. The agreement to give such receipt is directly referable to the agreement to distribute.

The agreement on the part of the heirs to ratify the action of the executors in delivering to certain of the heirs assets intended for them, is also a natural and proper thing to do, and that would seem to have no application other than to that part of the contract relating to the distribution of this estate. The agreement that no further accounting should be had in the probate court is an agreement of mutual value to all of the heirs as well as to the executors. The consideration for such a contract is the mutual agreement of the parties thereto.

In the absence of an action to reform this contract, it is the duty of the court to construe it in the terms in which it is written. An agreement will not be adjudged to be illegal when it is capable of a construction that will make it valid. *Lorillard* v. *Clyde,* 86 N. Y., 384.

This contract is dual in its nature. One part of it relates to the settlement of a controversy among the heirs of John H. Thomas, deceased, relative to the settlement and distribution of his estate; the

other part relates to the management of the affairs of The Thomas Manufacturing Company, a corporation organized under the laws of Ohio, of which corporation the parties to this contract are stockholders in various amounts. Upon the face of the contract these different subject-matters have no necessary relation to each other. If they can be separated, then this would relieve this part of the contract from the infirmity of a consideration personal to W. S. Thomas. (*Ohio, ex rel. Laskey et al.,* v. *Board of Education of Perrysburg,* 35 Ohio St., 519; *Doty et al.* v. *The Knox County Bank,* 16 Ohio St., 133; *Widoe* v. *Webb,* 20 Ohio St., 431, 435; Pollock on Contracts, 8 ed., 390.) On the other hand, if these considerations and agreements in relation to the settlement and distribution of the John H. Thomas estate are part of the considerations for the agreement of the parties in reference to the business of The Thomas Manufacturing Company, then this contract must fall, for The Thomas Manufacturing Company cannot be made the shuttlecock of the dissensions of the Thomas heirs.

If this part of the contract may be construed separately, then the only consideration for the promise of W. S. Thomas in relation to dividends is found in clause seven thereof, which provides that during the six-year period, neither Mrs. Summers nor Mrs. Matthews shall institute any legal proceedings to dissolve The Thomas Manufacturing Company if in her opinion the letter and spirit of this agreement has been faithfully kept by W. S. Thomas. This consideration is one moving di-

rectly to The Thomas Manufacturing Company and indirectly to W. S. Thomas as a large stockholder therein. There can be no objection to this because of the fact that he will profit, or expects to profit, as a stockholder in this corporation by reason of the forbearance of the other contracting parties to bring this suit. The same benefits would accrue to all the stockholders alike. True, there is nothing definite as to the time of forbearance. That is a matter to be determined by this plaintiff or her sister; it is an agreement to delay bringing this suit for an indefinite time, and a sufficient consideration for a valid agreement on the part of W. S. Thomas, who was largely interested as a stockholder in the continuation and prosperity of the business of this corporation.

It is averred in the answer, and admitted by the plaintiff, that during the six-year period named in the contract, to-wit, in March, 1909, this plaintiff and her sister began an action in the common pleas court of Clark county to dissolve The Thomas Manufacturing Company and prosecuted that suit to final judgment. That suit was pending at the time of the commencement of this suit in December, 1912.

Conceding for the present that this arrangement for the declaration and payment of dividends is a valid one, based upon the consideration that plaintiff and her sister would forbear to bring this suit for the dissolution of the company—and this is the only consideration mentioned in the contract that is not personal to W. S. Thomas—then the fact that this plaintiff elected to withdraw from the contract

and bring the action undoubtedly released W. S. Thomas from the performance of the covenants and conditions in the contract on his part thereafter to be performed. The plaintiff cannot claim the benefits of the contract and reject its burdens. She could not have a dissolution of the corporation in 1909 and dividends declared according to the provisions of this contract in 1911. It could not possibly have been within the contemplation of the parties to this contract that this agreement on the part of W. S. Thomas with reference to dividends should survive the bringing of a suit for the dissolution of the corporation that was to declare and pay these dividends. The fact that such a suit was pending would necessarily affect the judgment of the board of directors in determining not only the amount available for the payment of dividends, but also as to the advisability of declaring and paying *any* dividends. The directors of a corporation not only stand in the relation of trustees to the stockholders, but where a corporation is insolvent or threatened with insolvency, or where a suit for dissolution is pending, they stand in the relation of trustees to the creditors, and they are not permitted to divert assets from the payment of its debts by distributing these assets to the stockholders as dividends; neither can they be permitted to anticipate the action of the court. It is their duty to conserve these assets until the final judgment of the court in the dissolution proceedings, and deliver the same to the receiver appointed by the court, if one should be appointed. Any distribution of its assets in dividends or any application of its funds

to other than corporate business pending such an action, would be at their peril. *Goodin v. The Cincinnati & Whitewater Canal Co. et al.,* 18 Ohio St., 169; Elliott on Private Corporations (4 ed.), Section 401; Thompson on Corporations (2 ed.), Sections 1305, 5324, and 2 Morawetz on Private Corporations (2 ed.), Section 787.

Under such circumstances the directors cannot safely rely upon the values shown by the company's invoices. The value of a manufacturing plant as a going concern is always in excess of its value as an abandoned enterprise. Had this action of the plaintiff resulted in an order dissolving this corporation and appointing a receiver, its assets would necessarily have shrunken in value far below the value carried on its books, and possibly below the amount of its indebtedness. As shown by the report published by this court of that case, the petition filed for the dissolution of this corporation averred that in the fifteen years preceding the corporation had paid but three dividends—one of six per cent. and two of five per cent. each—and that during the eight years since the death of John H. Thomas the business had been carried on by the owners of a majority of the stock at a loss of more than $43,000; that there had been a great depreciation in the value of the property, and that in the preceding seven years nothing had been charged off for depreciation. It further appears from the uncontradicted evidence in this case that on October 1, 1910, the debts were $426,961.56, that there was then cash on hand available for the payment of these debts $55.06, and that on October 1, 1911,

the indebtedness of the company was $417,998.54, with cash on hand $145.37.

With such a petition confronting the board of directors and with the knowledge of the enormous indebtedness of this corporation, the declaration and payment of dividends would not only have authorized but would have been an invitation to creditors to intervene to protect their rights by the immediate appointment of a receiver.

The averments of this petition to dissolve this corporation, if true—and undoubtedly the plaintiff believed them to be true, not only when she filed the petition but during the time she prosecuted this suit—show beyond question that she had abandoned all hope of dividends from this corporation and had reached the conclusion that it was for the best interest of the stockholders to dissolve the corporation, pay its debts and distribute the surplus of its assets, if any, to the stockholders. Whether she was right or wrong in this conclusion is unimportant. Her actions none the less evidence her mental attitude in reference to these matters. One of the best aids to a court in construing a contract is the construction the parties themselves have given it as shown by their conduct in relation to the subject-matter thereof. Therefore, if there were any doubt as to the proper construction of this contract, the action of the plaintiff would resolve that doubt in favor of the construction that, having brought suit for the dissolution of the corporation in March of 1909, she cannot now rely upon the provisions of the contract for the declaration and

payment of dividends in 1910 and 1911 with that suit pending at the same time in the courts of this state; or, for that matter, after the final disposition of that case, whether it resulted in an order dissolving this corporation or not.

It further appears from the sixth clause of this contract that the parties thereto contemplated that the plaintiff and her sister would join with W. S. Thomas in the control and management of this corporation, in order to make it possible for W. S. Thomas to perform the conditions on his part to be performed. At the time the contract was written the plaintiff and her sister were represented on the board of directors of this corporation. The provision of the contract that this condition should obtain after the six-year period necessarily implies that it was expected and intended by all the parties to the contract that it should also obtain during those six years. When this contract was written the parties thereto must have known and understood that W. S. Thomas, as one of the directors of this corporation, could not declare and pay any dividends, no matter how willing he might be to do so. If this provision of the contract means anything it means that he agreed to join with the directors representing the plaintiff and her sister in voting to declare such dividends. The further provisions of this contract fully justify this construction, yet in 1907 or 1908 this plaintiff and her sister withdrew their representatives from this board of directors, refused to have anything further to do with the corporation's affairs and brought an action for its dissolution. This placed it beyond their

power to furnish him any assistance whatever in carrying out this provision of the contract.

The court of appeals held that the trial judge erred in failing to charge the jury that it was the duty of W. S. Thomas to notify the plaintiff of his readiness and willingness to vote as a director to declare dividends and to show by further evidence that she declined to cooperate. It is the settled law of this state that before recovery can be had upon a contract the plaintiff must show either that he substantially performed or tendered performance of the conditions on his part to be performed. *Raudabaugh* v. *Hart,* 61 Ohio St., 73, and *Mowry* v. *Kirk & Cheever,* 19 Ohio St., 375.

It is not the duty of the defendant in a suit for damages for breach of contract to demand performance on the part of the plaintiff or to notify him of his readiness and willingness to perform. That duty is upon the party to the contract who seeks to recover for its breach. However, in this particular case, a notice on the part of W. S. Thomas to this plaintiff that he was ready and willing to comply with the terms of the contract would have been wholly useless, for she had already placed herself in a position that made it impossible for her to render him any assistance whatever in the declaration of these dividends. It would have been an *indicia* of fraud on his part to make a formal demand upon this plaintiff to do something that he knew she had not the power to do. She was not then a director, nor had she any representative on the board of directors; on the contrary, she was then in court demanding the dissolution of this

corporation for the reasons stated in her petition that the company was not only not earning any dividends, but was operating at a loss. A notice to her would necessarily have meant nothing except a palpable attempt on the part of W. S. Thomas to manufacture a defense to a possible suit upon this contract.

The second clause of this contract provides that "no such dividend need be paid in the present or in the next six years during which the company has unusual payments to make to the heirs of the J. H. Thomas estate, the payment of any such dividends being postponed until after said last mentioned payments are made."

It is averred in the first defense of the answer that while the debts to this plaintiff and her sister were paid, yet they were paid largely with money borrowed for that purpose. The evidence is undisputed that nothing has been paid to W. S. Thomas or Findlay B. Thomas. Undoubtedly the parties to the contract expected that the earnings of this company would pay and discharge these debts within the six years next succeeding, but in this expectation they have been disappointed. The fact that money was borrowed to pay the plaintiff and her sister does not relieve the corporation from this debt. To the extent of the money borrowed it is still the same debt, although owing to a different creditor. The debt to the other heirs has not been paid even in part, either with earnings of the company or with borrowed money, and therefore the provision of the contract that the payment of dividends shall be postponed until after these debts to

the Thomas heirs have been fully paid necessarily defeats the plaintiff's right of action, for although the contract provided that dividends shall be paid in 1911, yet it further just as specifically provided that the payment of any such dividends shall be postponed until after payment to the John H. Thomas heirs has been made.

It is contended on the part of the plaintiff in error that the trial court erred in its charge to the jury as to the damages that might be recovered in this case. The court charged the jury that the plaintiff could recover from the defendant a sum equal to her share of the full amount of a dividend that would equal the net earnings of the company in these years. If this contract were a guarantee on the part of W. S. Thomas, made upon sufficient consideration, that the company would earn these dividends, then the charge of the court would be right. *Moorehouse* v. *Crangle,* 36 Ohio St., 130, and *Lorillard* v. *Clyde et al.,* 86 N. Y., 384.

But this contract is not a guarantee that these earnings would be made by the company. It is merely a promise that if the earnings are made they will be distributed in dividends. Where net earnings are not distributed in dividends no such rule obtains. These earnings must ultimately be distributed in dividends or expended in betterments to the property, and in either case they inure to the benefit of the stockholders. It is doubtful if any rule can be formulated by which the damages to a stockholder for failure to declare and pay dividends from net earnings could be estimated in dollars and cents. It is certain, however, that the rule given to

the jury by the trial court is not a correct one and not applicable to the facts in this case. A judgment against this defendant for the full amount of the plaintiff's share of the net earnings of this corporation that is still in its treasury or represented in betterments, merchandise or credits, leaving her the full right to participate as a stockholder either in the increased value of her stock or in future dividends that would necessarily be based in part upon these earnings, would be grossly inequitable and wholly unfair to the defendant.

If it were conceded, however, that the consideration for this contract is valid and that the defendant in error had fully performed all the conditions on her part to be performed, yet the record presents the further question of her right to recover damages for a breach of this provision of the contract in reference to the declaration and payment of dividends. This right to recover depends upon the legality of the promise or agreement on the part of a director and general manager of a corporation to declare and pay dividends for the six years next succeeding the date of the contract, and thereafter so long as he remains in the management of the affairs of the corporation, or through his ownership of stock therein, is able, with the assistance of the other parties to the contract, to control the management.

It is insisted upon the part of the defendant in error that this is a contract fixing the policy of the company with reference to the distribution of profits not needed in the company's business, in-

stead of creating and carrying a large and unnecessary surplus in the treasury, and that such a contract is valid. Yet counsel for the defendant in error, while contending that this is the proper construction of this contract, nevertheless insist that this contract requires that a dividend shall be declared each year equal to the entire net earnings of the company for that particular year. The language of the contract in that respect is as follows:

"Whenever the net earnings of the company in any year will permit a dividend of at least four per cent., a dividend of the largest whole per cent. permitted by the entire net earnings shall be declared and paid, unless otherwise agreed."

The authorities are uniform that the term "net earnings which will *permit* the payment of a dividend" are the surplus earnings that remain after defraying every expense, including loans falling due as well as the interest on such loans. *Mobile & Ohio Rd. Co.* v. *Tennessee,* 153 U. S., 486; *Hubbard* v. *Weare,* 79 Ia., 678; *Scott* v. *Eagle Fire Co.,* 7 Paige (N. Y.), 198; *Stevens* v. *U. S. Steel Corp.,* 68 N. J. Eq., 373; *Cratty* v. *Peoria Law Library Assn.,* 219 Ill., 516; Elliott on Corporations, Sections 400, 401; 5 Thompson on Corporations (2 ed.), Sections 5311, 5312.

Authorities are also uniform in holding that it is the duty of the directors, in determining the amount of net earnings available for the payment of dividends, to take into account the needs of the company in its business and sums necessary in the operation of its business until the income from

further operations is available, the amount of its debts, the necessity or advisability of paying its debts or at least reducing them within the limits of the company's credit, the preservation of its capital stock as represented in the assets of the company as a fund for the protection of its creditors and the character of its surplus assets, whether cash, credits or merchandise.

It is true that the law permits a corporation to borrow money to pay dividends when the earnings are represented in credits or merchandise readily reducible to cash, but if the company is then so largely indebted that it cannot borrow the money necessary for the payment of dividends upon its own credit, then the net earnings represented in credits and merchandise do not permit the payment of dividends, for it would hardly be contended that under any construction of this contract W. S. Thomas would be required to secure or furnish security for the repayment of money borrowed to pay dividends.

This provision in the contract, that net earnings less than four per cent. need not be distributed, contemplates the necessity of the corporation using some of its net earnings each year for betterments, for the reduction of its indebtedness and the further development of its business.

The provision in this contract as to net earnings, that would permit the payment of dividends, must necessarily be given the same construction as uniformly given it by the courts in defining these terms. It may be said that if this construction obtains,

then the contract might as well not have been written, at least so far as this provision of it is concerned, for equity would afford the same protection to the stockholders. That thought undoubtedly was in the mind of the judge of this court writing the opinion in the case of *Summers et al.* v. *The Thomas Mfg. Co.,* 82 Ohio St., 338, when he said that "It will be easier to assume than to demonstrate that the agreement of the sisters is supported by any consideration whatever." However, if such an agreement were made and assented to by all the stockholders and directors, it would amount to a contract fixing the policy of the company as to the amount of surplus it would retain in its treasury and would aid largely in a proper suit in determining whether the directors were guilty of an abuse of discretion in refusing to declare a dividend.

On the other hand, if this provision of the contract requires W. S. Thomas, as director, to vote for the declaration and payment of dividends in a sum equal to the net earnings of the company each year, after deducting operating expenses only, without regard to the losses, if any, in the preceding years, the debts, need of betterments and requirements of the company in the operation of its business, and deprives or limits him in the exercise of a fair and honest discretion in the discharge of his official duty to the corporation and its stockholders, then such contract is against public policy and void. *Bliss* v. *Matteson,* 45 N. Y., 22; *Woodruff* v. *Wentworth,* 133 Mass., 309; *Guernsey* v. *Cook,* 120 Mass., 501; *Woodstock Iron Co.* v. *Richmond &*

*Danville Extension Co.,* 129 U. S., 643, and *Wardell* v. *Railroad Co.,* 103 U. S., 651.

"A director has no right to sell his influence in the management of the company, or to enter into any agreement by which his official action would be influenced or controlled. Such an agreement would be dishonest and illegal; it would be an agreement to commit a breach of trust." 1 Morawetz on Private Corporations (2 ed.), Section 519.

In the case of *West* v. *Camden,* 135 U. S., 507, the trial court charged the jury that a contract the purpose and effect of which was to influence the defendant as a stockholder and officer of the company in the decision of a question affecting the private rights of others, and by which contract he was placed under direct and very powerful inducements to disregard his duties to other members of the corporation who had a right to demand his disinterested action, was against public policy and void. This charge was sustained by the supreme court of the United States.

In the case of *Singers-Bigger* v. *Young,* 166 Fed. Rep., 82, it was held that a contract by which a stockholder employed a director to look after his interest in a corporation was against public policy and void, in so far as it obligated the director to assist the plaintiff to control the corporate action of the company, regardless of his duty as a director to represent and act for all the stockholders alike.

A contract written in 1905 requiring a director of a corporation to declare and pay in dividends the entire net earnings of the company in the years

1910 and 1911, regardless of the financial condition of the company, its losses in previous years and its maturing debts and interest, could not be sustained upon any theory. In human affairs there is no such thing as certainty. No stockholder or director can know in 1905 what the financial condition of a corporation will be in 1911, or for that matter in any of the intervening years. Such a contract would prevent him from exercising a fair and unbiased judgment upon the facts and conditions presented for his consideration in 1911 and is necessarily void. Any other conclusion would be destructive of corporate interests, and would deprive the minority holders of stock of the protection afforded to them by the judgment of a board of directors, uninfluenced by personal consideration or private contract.

Counsel for defendant in error rely upon the case of *Moorehouse* v. *Crangle,* 36 Ohio St., 130. That was a contract, guaranteeing that profits would be earned and paid by the corporation, made with the plaintiff as an inducement for him to subscribe for stock in the corporation. There was no agreement that dividends would be declared regardless of the needs of the company. The sole agreement relied upon was that profits would be earned and paid in the regular, ordinary, proper way. The court held that this was a personal contract of guaranty on the part of the defendant, and not a contract to answer for the debt, default or miscarriage of another. Clearly that case has no application to the questions involved here.

The case of *Lorillard* v. *Clyde et al.,* 83 N. Y., 384, involves the same principle decided in the case of *Moorehouse* v. *Crangle, supra.*.

Neither has the case of *Doan* v. *Rogan,* 79 Ohio St., 372, any application to the questions presented by this contract. That was a contract among all the promoters of a proposed corporation, by the terms of which Rogan was to furnish all of the capital and Doan, Mahon and Roth to give their personal services and attention to the business of the then existing partnership and of the proposed corporation, for a period of three years. As an inducement to Rogan to furnish this capital it was agreed that if either Doan, Mahon or Roth should sever his connection with the temporary partnership or proposed corporation, without the consent of Rogan, the person so offending was to pay to Rogan the sum of $1,000 as liquidated damages. The action was brought against Doan under this clause of the contract, and the court held that there was nothing invalid or unlawful in this provision of the contract of the promoters for the protection of Rogan, who furnished all the capital, it appearing that the contract was made and entered into by all the persons interested or to become interested as stockholders in the proposed corporation.

On the other hand, the authorities are uniform that a director of a corporation cannot barter and sell his official discretion, nor enter into any contract whatever as to his actions in his official capacity that will in any way restrict or limit the free exercise of his judgment and discretion, or place him under any direct and powerful inducement to

disregard his duty to the corporation and the stock-holders in the management of the corporate affairs. Such a contract is against public policy and void.

*Judgment of the court of appeals reversed, and judgment of the common pleas court affirmed.*

NICHOLS, C. J., JOHNSON and WANAMAKER, JJ., concur.