McKEAGUE, Circuit Judge,
concurring in part and dissenting in part.
I concur with the majority’s opinion on the issue of indemnification. I must dissent, however, from its conclusion that a genuine issue of material fact precludes summary judgment on the issue of breach.
The majority reaches its conclusion by reasoning that (1) whether the drag-along provision was self-executing or not is ambiguous and (2) such issue is material to the outcome of the case. My dissent is based on disagreement with the latter.
The general rule under Ohio law is that “before recovery can be had upon a contract the plaintiff must show either that he substantially performed or tendered performance of the conditions on his part to be performed.” Thomas v. Matthews, 94 Ohio St. 32, 113 N.E. 669, 674 (1916). The general rule is “subject to the exception that a tender is unnecessary where it would merely be a useless ceremony,” Gebbie v. Efros, 95 Ohio St. 215, 116 N.E. 31, 33 (1917), such as where a party “makes it certain that he does not intend under any circumstances to comply,” George Wiedemann Brewing Co. v. Maxwell, 78 Ohio St. 54, 84 N.E. 595, 597 (1908), or “is clearly unable to perform his part of the contract,” Gebbie, 116 N.E. at 33. See also Farmers Comm’n Co. v. Burks, 130 Ohio App.3d 158, 719 N.E.2d 980, 990 (1998) (“Once one party to a contract repudiates, the other party is entitled to a judgment without the necessity of tendering performance.”).
The record does not support an inference that American Greetings demonstrated an unequivocal intent not to comply, and even assuming American Greetings *105 was clearly unable to deliver the properties free and clear of the Cookie Jar litigation on June 7, MoonSeoop waived any right to demand that it do so by acting inconsistently with this claimed right. Thus, whether the drag-along was self-executing or not, MoonSeoop simply has no legal basis upon which to insist on recovery notwithstanding its own failure to perform.
Under Ohio law, a nonperfoming party must show that the other party’s repudiation was unequivocal — “a mere expression of doubt as to willingness or, ability to perform is insufficient to constitute repudiation.” Burks, 719 N.E.2d at 990. As stated by the Ohio Supreme Court:
[W]hen the other party repudiates and makes it certain that he does not intend under any circumstances to comply, a showing of readiness and ability on the part of the complaining party to then and there perform his part, communicated to the other party and accompanied with demand of compliance by such other party, is sufficient compliance without an actual formal tender.
Wiedemann, 84 N.E. at 598 (emphasis added).[1] In Wiedemann, the Wiedemann Brewing Company exercised an option to lease a building owned by the Maxwells, and the parties agreed to meet at a certain time and place to execute the necessary papers. The Maxwells failed to appear. Wiedemann’s agent found the Maxwells near their attorney’s office and informed them that Wiedemann was ready to execute the lease. The agent was informed in no uncertain terms that the Maxwells did not intend to comply with the lease agreement and that, in fact, they had leased the property to a different company the day before. Noting that “at no time, then or afterward, did the Maxwells show any disposition to comply with the option contract, but stood by their refusal,” the court found that Wiedemann could sustain its action for specific performance despite its failure to perform under the contract. Id. at 597. Under such circumstances, “[t]he conduct of the other parties was such as to render [the tender of the lease or payment of rent] a mere idle ceremony.” Id.
Even viewing record in the light most favorable to MoonSeoop, American Greetings’s conduct falls far short of indicating it did “not intend under any circumstances to comply.” Id. at 598. To the contrary, American Greetings did all it could to make the deal happen. It filed suit against Cookie Jar, seeking declaratory relief and specific performance of the drag-along right, to establish certainty in the MoonSeoop deal. It sought to accommodate MoonScoop’s financial backer by negotiating a long form asset-purchase agreement acceptable to the backer, R. 87-13, even though the duty to acquire acceptable financing was squarely on MoonScoop, R. 89-6, Binding Term Sheet, at 2. By MoonScoop’s own admission, American Greetings expressed that it would “bend [over] backwards” to make the deal happen. R. 132, Vaturi Dep., at 45-46. Joel Vaturi, who took part in the negotiations on behalf of MoonSeoop, testified that at a May 27 meeting, American Greetings said they would “live by the contract” and that “Cookie Jar was their problem.” R. 132, Vaturi Dep., at 51-52.
It is true that if the drag-along provision were not self-executing, American Greetings may not have been able to perform its end of the bargain on June 7 despite its best efforts. The concurring opinion cites cases stating that a buyer may maintain an *106 action without tendering payment when a seller is clearly unable to perform. One such case, Resolution Trust Corp. v. York, No. C960180, 1997 WL 78591 (Ohio Ct. App. Feb. 26, 1997), involved a buyer who stopped making monthly installment payments on a piece of land when he found out that there was a tax lien on the property. The buyer contended that the seller breached his end of the contract to convey marketable title. The seller argued that his duty to convey marketable title never materialized because the buyer never tendered full performance. The Ohio Court of Appeals held, “Once it became apparent that [seller] would never be able to perform (clear the title), [buyer] could repudiate the contract and sue for damages.” York, 1997 WL 78591, at *2. Gebbie v. Efros, 95 Ohio St. 215, 116 N.E. 81, 33 (1917), similarly involved “an incumbrance on the property which had not been and could not be removed,” a fact the court found “clear and explicit.” Noting that “[i]t would have been an idle ceremony on the part of defendant ... to pay or offer to pay the balance of the purchase price under such circumstances,” the court held that the buyer did not need to tender payment of the balance before he could maintain an action for damages. 116 N.E. at 33.
Gebbie and York are inapposite. Those cases involved sellers of real estate whose inability to perform (deliver clear title) was beyond question and buyers who immediately stopped performance and sued for damages upon discovering the true condition of the land. All Gebbie and York establish is that MoonScoop had an avenue of relief that it did not pursue. If it were clear that American Greetings would never be able to perform, MoonScoop had a right to stop working on its end of the deal (obtaining financing to make timely payment) and seek legal redress. Instead, fully aware of the Cookie Jar litigation, MoonScoop nonetheless proceeded with the deal.
Under Ohio law, a party may waive contractual terms by intentionally acting in a manner inconsistent with the claimed right and thereby be estopped from insisting upon it. See, e.g., Marfield v. Cincinnati, D. & T. Traction Co., 111 Ohio St. 139, 144 N.E. 689, 691 (1924) (“A waiver is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming it.... In the latter case, ... there may be an estoppel from insisting upon the right claimed to have been relinquished.”); Daniel E. Terreri & Sons, Inc. v. Mahoning Cnty. Bd. of Comm’rs, 152 Ohio App.3d 95, 786 N.E.2d 921, 932-33 (2003) (“Under the doctrine of ‘waiver by estoppel’ or implied waiver, a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance.” (citing 13 Williston on Contracts § 39:29)). The record is clear that MoonScoop intentionally acted inconsistently with any right to have the properties free and clear of Cookie Jar’s claims by June 7. From the very beginning, MoonScoop was aware of the possibility of litigation by Cookie Jar, and the Binding Term Sheet provided MoonScoop protection against this threat in the form of a provision requiring American Greetings to indemnify MoonScoop against claims asserting that American Greetings did not have the legal right to sell and transfer the properties to MoonScoop. R. 132, Vaturi Dep., at 260; R. 89-6, Binding Term Sheet, at 5. Moon-Scoop understood that part of the reason for the indemnification provision was to protect MoonScoop against potential claims by Cookie Jar. R. 132, Vaturi Dep., at 83.
As June 7 drew closer and it became clear that Cookie Jar did not intend to *107 comply with the drag-along, MoonScoop progressed with the deal even as it accused American Greetings of being unable to deliver the properties free and clear by June 7. R. 132-28, Email from Vaturi to Ellenbogen. On the morning of June 7, Vaturi sent an email to Josef Mandelbaum, CEO of American Greetings’ Intellectual Property Group, in which Vaturi stated, “The agreement ... requires that the properties be handed over with no pending material claims, and we now all know that this won’t be the case unless a settlement takes place with Cookie Jar within the next hours [sic].” Vaturi continued that MoonScoop still “very strongly want[s] to close this deal in a friendly manner.” Regarding the Cookie Jar matter, Vaturi indicated that MoonScoop would be satisfied with adequate representations and warranties and legal action against Cookie Jar, as long as MoonScoop remained without harm. R. 132-30, Email from Vaturi to Mandelbaum, at 1-2. Finally, in the communication sent by MoonScoop at 11:48 p.m. on June 7 indicating that it was ready and willing to close, Vaturi again stated MoonScoop’s understanding that American Greetings was “unable to ‘drag along’ Cookie Jar ... and thus [was] not currently in a position to deliver all of the Properties free and clear of all liens, claims, and security interests as provided by the Binding Term Sheet.” Vaturi nonetheless indicated MoonScoop’s desire to close the deal and gave American Greetings a 60-day window within which to comply with the Binding Term Sheet: “if the Properties are not delivered in accordance with the terms of the Binding Term Sheet within 60 days of this letter, MoonScoop cannot be obligated to fund as we may no longer have our financing.” R. 132-33, Letter from Vaturi to Mandelbaum, at 3-4. Regardless of whether American Greetings could have performed or not, MoonScoop waived any right to demand that the properties be delivered June 7 free of any claims by Cookie Jar by acting utterly inconsistently with such a right; thus, it may not rely upon the Cookie Jar litigation as a basis for its current action.[2]
The concurring opinion finds “nothing in Ohio law that would penalize a party for continuing to work to salvage a transaction in the face of apparently impossible odds.” While this may be true as a general statement, Ohio law does prevent a party from later asserting a right that it previously waived through its conduct. See, e.g., Nat’l City Bank v. Rini, 162 Ohio App.3d 662, 834 N.E.2d 836, 840 (2005) (finding that a bank waived its right to impose personal liability upon a guarantor of a debt because, after the guarantee was signed, the bank informed the guarantor that the debt was secured by business assets only and that he was not a personal guarantor); Northwoods Condo. Owners’ Ass’n v. Arnold, 147 Ohio App.3d 343, 770 N.E.2d 627, 630 (2002) (finding that a purchaser of a condominium who had actual knowledge of a pet restriction on the property before purchase waived any right to later assert that the pet restriction was illegally adopted).
In short, this is a simply case where neither party lived up to its contractual obligations: MoonScoop did not pay by the deadline, and American Greetings did not deliver the properties. Because neither *108 party performed or tendered performance, “the duty of neither party becomes due under the contract, and neither party can be in breach of contract, despite the fact that each party has failed to perform as promised.” 15 Richard A. Lord, Williston on Contracts § 43:31 (4th ed.); see also Raudabaugh v. Hart, 61 Ohio St. 73, 55 N.E. 214, 217 (1899) (“So long, therefore, as there is no tender of the deed on the one hand, nor of performance on the other, neither party is in default.”). The deal simply fell through, as deals sometimes do, and no right of action accrued to either party. For these reasons, I respectfully dissent.

. I do not contend that MoonScoop waived its right to ultimately receive the properties free and clear. I merely point out that Moon-Scoop was willing to accept the properties with the Cookie Jar litigation pending as of June 7, as long as American Greetings indemnified it and the claims were resolved within 60 days. Accordingly, MoonScoop cannot now maintain an action by claiming that American Greetings was in breach because it could not have delivered by June 7.