# ERNEST J. SEITZ v. THEODORE MICHEL.[1]

## January 14, 1921.

## No. 22,089.

**Corporation — partnership may not pretend to be a corporation.**

1. Public policy will not permit a copartnership to do business in the guise of a corporation, nor allow the partners to be a corporation as to the rest of the world, while as between themselves the enterprise conducted in the corporate form is in fact a joint venture.

**Contract contrary to public policy — parties not estopped from repudiating it.**

2. A contract which is contrary to public policy, cannot be validated by acts of the parties in recognition of its validity. Neither is estopped from questioning it because the other has parted with property or rendered services in reliance upon it.

**Corporation—guaranty of employment and of being director.**

3. A contract in which defendant "guaranteed" that, as long as plaintiff lived, he should share in the management of certain corporations in which both were stockholders and directors, and that he would furnish him with employment by such corporations, is contrary to public policy. It was an attempt to bargain away in advance the independent judgment which defendant was bound to exercise in casting his vote as a stockholder and director so as to best conserve the interests of the corporations and the entire body of their stockholders.

**Invalid contract between directors cannot be ratified by stockholders.**

4. The consent of all the stockholders to a contract between the two principal ones, intended to permit them to obtain the benefits of using the corporate form in carrying on their business enterprises, while remaining copartners as between themselves, does not remove the objection that the contract is against public policy.

[1] Reported in 181 N. W. 102.

**Corporation—action by stockholder against officer.**

> 5. A stockholder cannot maintain an individual action against an officer of the corporation for consequential damages for the improper diversion of corporate funds. The right of action is in the corporation. If the corporation is controlled by the guilty officer, a stockholder may sue, but must bring his action in a representative capacity to have the funds restored to the corporation for the benefit of all the stockholders.

Action in the district court for Ramsey county to recover $185,000. Among other matters the answer alleged that defendant had at no time employed plaintiff to perform services either upon express or implied contract; that prior to the commencement of the action plaintiff never made any claim under the terms of the alleged contract, except that in an action heretofore commenced by plaintiff against defendant, plaintiff alleged in his complaint that defendant "induced the plaintiff to embark in said undertakings with him upon the promise that the said plaintiff should become a director and secretary of each of said companies; that the said parties should share jointly in the management and conduct of said business and devote their time and energies to the building up of the same so far as necessary." Defendant's motion for judgment on the pleadings was granted by Michael, J. Plaintiff's motion for leave to serve an amended complaint was denied. From the judgment entered in favor of defendant, plaintiff appealed. Affirmed.

*H. E. Fryberger* and *Butler, Mitchell & Doherty,* for appellant.

*O. E. Holman,* for respondent.

LEES, C.

Defendant moved for judgment on the pleadings. The motion was granted and plaintiff appeals from the judgment.

Though not separately pleaded as such, the complaint embraces two causes of action. With respect to the first, it alleges that the parties were partners from 1891 to 1892, when they organized a Minnesota corporation called the Union Brass and Metal Manufacturing Company to take over their business. In February, 1914, plaintiff owned 469 shares of its stock; defendant, 1,344 shares; and there were eight other stockholders owning 78 shares. Defendant was president and plaintiff secre-

tary of the corporation. From 1892 to 1914 the business was managed jointly by plaintiff and defendant. When the brass company was incorporated, they mutually agreed that the business to be conducted by the corporation should be in the nature of a joint venture on their part, defendant's interest to be considerably larger than plaintiff's, and the stock was accordingly issued to them in proportion to their several interests. The venture was to continue during the lifetime of the plaintiff. He was to devote his entire time and energy to building up the business. Defendant was to furnish him with employment for life in the enterprise in which they thus engaged, and agreed that so long as he was able to render services he should be paid the reasonable value thereof. He also agreed that he would not sell his stock or interest in the business to anyone without first offering it to plaintiff; that he would protect plaintiff's rights as a minority stockholder; that plaintiff should always share in the management of the company, which, though nominally a corporation, should be in fact as between plaintiff and defendant a joint venture, they occupying the relation of copartners.

Thereafter plaintiff and defendant were instrumental in organizing four more Minnesota corporations, viz.: the Central Supply Company; Elite Laundry Company; Capitol Steam Laundry, and Banner Laundry Company. In each of these corporations, defendant was a majority and plaintiff a minority stockholder, and in each a small number of shares were divided among employees. The agreement made when the brass company was organized was extended to each of the other corporations when they were organized. Up to February 14, 1914, plaintiff gave all his time and energy to the development of the business of the corporations. On that day, at the annual meeting of the stockholders, defendant, holding a majority of the stock, voted it for stockholders other than plaintiff as directors, thus ousting him from the management of the corporations, and also caused his discharge as manager, assistant manager or employee of the corporations, and has ever since continued to repudiate the contract between them. Plaintiff's services to the several corporations would have been reasonably worth $10,000 per annum. By depriving him of employment and office, defendant has damaged plaintiff in the sum of $50,000.

With respect to the second cause of action, the complaint alleges that

after February, 1914, defendant entered upon a course of conduct planned to eat up the surplus and profits of the corporations. In carrying out this plan, he allowed himself exorbitant salaries, while rendering only nominal services. In some of the corporations he provided for the payment of an excessive salary to his son and has also paid him a bonus out of the surplus profits of the business. He has placed his brother on the pay-roll at a substantial salary, although his services are merely nominal. He has caused favored employees to be paid excessive wages. He owns the building occupied by one of the laundry companies and exacts an excessive rental. He is running the corporations for the benefit of members of his family. He refuses to sell his stock or buy plaintiff's, although plaintiff is willing to have the price fixed by disinterested third persons. Defendant's misconduct has reduced the value of plaintiff's interest in the corporations from $222,000 to $87,000 and damaged him in the sum of $135,000. The demand for judgment upon the two causes of action was $185,000.

Defendant answered and plaintiff replied. Then followed the motion for judgment. After it was granted, plaintiff moved to amend his complaint by alleging that the stockholders of the several corporations had notice of the terms of his contract with defendant; acquiesced therein; accepted its benefits and were estopped from questioning its validity. Affidavits were read in support of and in opposition to the motion, which was denied.

1. Defendant questions the validity of the alleged contract, asserting that no right of action can be founded upon it. His first point is that the contract is void because public policy will not permit a copartnership to masquerade in the guise of a corporation. The opinion in Jackson v. Hooper, 76 N. J. Eq. 592, 75 Atl. 568, 27 L.R.A.(N.S.) 658, contains a full discussion of the point. The court said:

"The law never contemplated that persons engaged in business as partners may incorporate with intent to obtain the advantages and immunities of a corporate form and then, Proteus-like, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require. The policy of the law is to the contrary. * * * They cannot be partners inter sese and a corporation as to the rest of the world. * * * Upon grounds of

public policy, the doctrine contended for cannot be tolerated as it renders nugatory   *   *   *   the authority of the legislature   *   *   *   in respect to the creation, supervision and winding up of corporations."

We approve of this doctrine. It is in line with the decision rendered in Beyer v. Woolpert, 99 Minn. 475, 109 N. W. 1116, where this court held that the grant of the franchise to be a corporation is an exercise of the sovereign power of the state; that it creates a contract between the state and the corporation and its members, and that the franchise cannot be surrendered and its obligations repudiated without the consent of the state. Of course a copartnership may be formed to acquire and hold stock in a corporation. Such was not the purpose of the parties to this contract. They were individual stockholders in the corporations; they did not take the stock as copartners. To the world they appeared to be engaged in conducting five separate business enterprises, as the managing officers of as many corporations. They have had a falling out over the election of officers and plaintiff, who was ousted from office, proposes to show that, by virtue of a private understanding with defendant, each corporation was really a disguised copartnership. The case is unique. None like it has been called to our attention. The learned trial court remarked that the mere statement of the proposition upon which plaintiff must rely in order to recover ought to be sufficient to show that the contract is contrary to public policy.

Plaintiff asserts that, if the contract was contrary to public policy, defendant is in no position to question its validity because he recognized and acted on it for more than 20 years. A contract, void because contrary to public policy, cannot be thus validated. Neither party is estopped from questioning it because the other has parted with property or rendered services in reliance upon it. Colby v. Title Ins. & Trust Co. 160 Cal. 632, 117 Pac. 913, 35 L.R.A.(N.S.) 813, Ann. Cas. 1913A, 515; Brown v. First Nat. Bank of Columbus, 137 Ind. 655, 37 N. E. 158, 24 L.R.A. 206; Bay v. Davidson, 133 Iowa, 688, 111 N. W. 25, 9 L.R.A. (N.S.) 1014, 119 Am. St. 650; Tate v. Commercial Bldg. Assn. 97 Va. 74, 33 S. E. 382, 45 L.R.A. 243, 75 Am. St. 770; Reed v. Johnson, 27 Wash. 42, 67 Pac. 381, 57 L.R.A. 404; Handy v. St. Paul Globe Pub. Co. 41 Minn. 188, 42 N. W. 872, 4 L.R.A. 466, 16 Am. St. 695; 13 C. J. 506; 6 R. C. L. 819.

2. There is much authority tending to sustain plaintiff's contention that the owners of a majority of the stock of a corporation may combine, either through the agency of a voting trust or by private agreement, to secure and retain control and ensure permanency in the management of corporate affairs.

There is nearly as much authority condemning all such combinations and private arrangements as contrary to public policy. We express no opinion as to whether every combination or "gentlemen's" agreement among the principal stockholders should be held to be unenforceable if the parties choose to repudiate it. What we have to say on the subject is limited strictly to the facts as they appear from the complaint.

It is alleged that defendant "guaranteed" that as long as plaintiff lived he would be furnished with employment by the corporations, provided he was able to render services to them, and further that he should share in the management of the corporations as long as he lived. We are of the opinion that such an agreement is against public policy, and that the failure to perform it gives rise to no right of action. In order to perform it defendant would always have to hold enough stock to control the corporate elections, and was bound to vote the stock for plaintiff as a director and secure the election of other directors who would vote to retain him in the service of the corporations in some managerial capacity. Defendant would no longer be free to exercise his judgment with sole regard to the interests of the corporation and the entire body of its stockholders. Stockholders are entitled to the exercise of the free and honest judgment of the directors upon conditions as they arise and bear upon the interests of the corporation. A director may not bargain away in advance the judgment the law contemplates he shall exercise at subsequent official meetings of the board. If the contract is valid, defendant could only vote in one way without subjecting himself to an action for damages. That fact would necessarily influence him in casting his vote. There were other stockholders and they had the right to have defendant exercise his independent judgment in casting his vote. The fact that they are not parties to the action and do not appear to be complaining is of no consequence, for, if the contract is against public policy, a court will not lend its aid to its enforcement at the suit of either party to it. Public policy cannot be contravened by any arrangement or agreement of

the parties however expressed. Fidelity & Casualty Co. of New York v. Eickhoff, 63 Minn. 170, 65 N. W. 351, 30 L.R.A. 586, 56 Am. St. 464.

The views we have expressed are in accordance with the decided weight of authority. West v. Camden, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. ed. 254; Guernsey v. Cook, 120 Mass. 501; Shepaug Voting Trust Cases, 60 Conn. 576, 24 Atl. 32; Luthy v. Ream, 270 Ill. 170, 110 N. E. 373, Ann. Cas. 1917B, 368; Scripps v. Sweeney, 160 Mich. 148, 125 N. W. 72; Rush v. Aunspaugh, 179 Ala. 542, 60 South. 802; Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L.R.A. 682, 61 Am. St. 436; Gage v. Fisher, 5 N. D. 297, 65 N. W. 809, 31 L.R.A. 557. They are also in accord with what was said in Dickson v. Kittson, 75 Minn. 168, 77 N. W. 820, 74 Am. St. 447, and in Van Slyke v. Andrews, 136 Minn. 316, 178 N. W. 959, although the facts in those cases were quite different from those in the case at bar. There is nothing in Mc-Mullan v. Dickinson Co. 63 Minn. 405, 65 N. W. 661, 663, sanctioning a contrary doctrine.

3. Plaintiff earnestly insists that he should have been permitted to amend his complaint by alleging that all the stockholders had notice of the contract and ratified it, accepted its benefits and became estopped from questioning its validity. He contends that, if the amendment had been allowed, the contract would not have been vulnerable to attack as one against public policy.

In his affidavit, on which the motion to amend was based, he stated that there was no difference in the facts there set forth and those alleged in the complaint. If such was the case, the amendment added nothing to the pleading and he was not prejudiced by the denial of his motion.

There are different expressions in the books which appear to justify plaintiff's contention that, if all the stockholders had consented to the making of the alleged contract, it would not be open to the objection noted in the second division of this opinion. But the objection first considered could not be overcome by showing that such consent was given. The contract would be no less objectionable because all the stockholders had agreed that the corporate form in which the business was conducted should merely be a cloak for a copartnership. The state has not consented to the arrangement. A court will not directly enforce a contract or recognize it by awarding damages for its breach if it is con-

trary to public policy, but will leave the parties where it finds them, not out of consideration for the rights of either, but because the contract is injurious to or contravenes some interest of society or of the state. Adams v. Adams, 25 Minn. 72; Peterson v. Christensen, 26 Minn. 377, 4 N. W. 623; Boyle v. Adams, 50 Minn. 255, 52 N. W. 860, 17 L.R.A. 96; Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A. (N.S.), 510, 17 Ann. Cas. 687; Buck v. Walker, 115 Minn. 239, 132 N. W. 205, Ann. Cas. 1912D, 882; 1 Dunnell, Minn. Dig. § 1885.

4. Plaintiff cannot recover on the second cause of action in its present form. The remedy for defendant's alleged diversion of corporate funds is not an individual action against him for consequential damages. The wrongs complained of are wrongs against the corporation. The funds diverted should be restored to the corporations. The right of action is in them. The alleged wrongdoers are the managing officers. They may be called to account by the corporations. A minority stockholder may sue because the corporations are under the control of the alleged wrongdoers, but he must sue in a representative capacity for the benefit of the corporations and not for the damages to him individually. Horn Silver Mining Co. v. Ryan, 42 Minn. 196, 44 N. W. 56; Morrill v. Little Falls Mnfg. Co. 46 Minn. 260, 266, 48 N. W. 1124; Venner v. Great Northern Ry. Co. 117 Minn. 447, 136 N. W. 271; Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731. See also Seitz v. Michel, 141 Minn. 244, 170 N. W. 197. The cases are collated in a note to Johns v. McLester, 97 Am. St. 27, and in 14 C. J. 924-929. True, it has been held that a stockholder may sue a director or other officer for the violation of a duty arising upon a special contract. But if, as here, the contract is void, there is no room for the application of that principle.

It is urged that a stockholder ought to have an individual right of action for the wrongful diversion of corporate funds, when the purpose of the managing officer in diverting the funds is to render his stock unsalable. The wrong is done when the funds are improperly expended. Such funds do not belong to the stockholders, but to the corporation. The wrong done results in injury to the stockholders collectively. Money which might have been distributed among them as dividends has been wasted. The value of all the stock has been diminished. The injury to

each stockholder is of the same character. Whether the guilty officers were animated by hostility towards a particular stockholder or by greed, or were merely improvident, the result is the same and affects all the stockholders alike. On principle and authority the individual stockholder cannot sue the officers for damages sustained by their wasteful expenditure of corporate funds. 4 Fletcher, Cyc. Corp. § 2680; Smith v. Hurd, 12 Metc. (Mass.) 371, 46 Am. Dec. 690; Wells v. Dane, 101 Me. 67, 63 Atl. 324; Niles v. New York Cent. & H. R. R. Co. 176 N. Y. 119, 68 N. E. 142; McMullen v. Ritchie, 64 Fed. 253.

It is a matter of no consequence that the misconduct is charged against the defendant as an individual and not as an officer, or that the wrongful acts alleged were done with the specific intent and fraudulent design of injuring plaintiff. Wells v. Dane, supra. We do not mean to say that under no circumstances can a stockholder sue an officer for an injury to himself. If the injury is solely to him, no doubt he may sue in his own right.

We are of the opinion that each of the orders made by the learned trial court was right, and hence the judgment appealed from is affirmed.