GEORGE R. BERGER, Respondent, *v.* ARMIN EICHLER, Appellant.

First Department, December 19, 1924.

**Partnership — action for accounting based on misrepresentation and fraudulent concealment — proof shows existence of corporation and not partnership — plaintiff sold his interest to defendant — misrepresentation as to financial condition of corporation before sale of plaintiff's stock and concealment of negotiation by defendant to sell patents belonging to corporation not proven.**

Judgment should be directed in favor of the defendant in this action for an accounting which was brought on the theory that a partnership existed between the plaintiff and the defendant, and is based on the alleged misrepresentations made by the defendant at the time the plaintiff sold his interest to him to the effect that the partnership was financially embarrassed and that new funds could not be secured until the plaintiff was eliminated and on alleged fraudulent concealment of negotiations between the defendant and a third person for the

sale of patents belonging to the copartnership, since the proof establishes that no partnership ever existed between the plaintiff and defendant but that the business was conducted by them through a legally organized corporation.

Furthermore, the evidence does not show any fraudulent misrepresentations or fraudulent concealment by the defendant, but on the other hand it does show that the plaintiff, at the time he sold his interest to the defendant, knew in a general way that the defendant was negotiating for the sale of patents belonging to the corporation.

It further appears that at the time of the sale of the plaintiff's interest to the defendant the negotiations with a third person who ultimately bought the patents had not terminated in an agreement and that no agreement was made for the sale until several months after the plaintiff sold his interest to the defendant.

APPEAL by the defendant, Armin Eichler, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June, 1923, upon the decision of the court rendered after a trial at the New York Special Term directing an accounting.

*Fluegelman & Trosk* [*I. Maurice Wormser* of counsel; *Ralph O. L. Fay* with him on the brief], for the appellant.

*Neuman & Newgass* [*Franklin Waldheim* of counsel; *George W. Newgass* and *William P. Martin* with him on the brief], for the respondent.

DOWLING, J.:

This action was brought by plaintiff to secure an accounting of one-half of the profits realized by defendant under a contract made by him with E. I. duPont de Nemours and Company, on the ground that plaintiff and defendant were copartners and that defendant fraudulently induced plaintiff to part with his one-half interest in the copartnership by concealing the fact that he was negotiating for the sale of the letters patent and rights and manufacturing plant of the copartnership to the DuPont Company, and also by representing that the business of the copartnership was unprofitable and that it was impossible to proceed further unless new capital was enlisted, the parties controlling which insisted upon plaintiff being eliminated from the business. The entire theory of the suit, as developed by the complaint, is that there was a copartnership existing between the parties, in which the parties held equal shares, and the judgment demanded is, among other things: "1. That plaintiff is the owner of and entitled to a one-half interest in the contract made by and between the defendant and the E. I. Du Pont deNemours and Company on November 24, 1916, and to one-half of the profits and benefits derived therefrom."

The proof upon the trial demonstrated that there never was

a copartnership between the plaintiff and defendant herein. The complaint alleged that the copartnership was entered into on or about May 1, 1915. As a matter of fact, the parties, together with one Bert Reese, on April 29, 1915, made and acknowledged a certificate of incorporation of Kumaron Company, Inc., which was organized to carry on the business described in the complaint as that of the copartnership, and which consisted generally in taking over certain letters patent belonging to defendant and exploiting the same and manufacturing products thereunder. By said certificate it was provided that the capital stock of the corporation should be $5,000, divided into fifty shares, and the amount of capital with which it was to begin business was $500. Plaintiff agreed to take three shares, defendant, one, and Reese, one. The corporation was duly formed under the laws of the State of New York on May 19, 1915, and duly proceeded to function. The incorporators met on June 29, 1915, adopted by-laws and accepted an offer of defendant to transfer his patents to the corporation for one share of the stock. They also established the principal office of the corporation in the borough of Brooklyn. On the same day the directors met and elected plaintiff president of the company, defendant treasurer and Reese secretary. The stockholders ratified the purchase of the patents from defendant for one share of stock, and plaintiff made an offer to purchase forty-nine shares of the capital stock of the company for $4,900, payable as the board of directors might require, which was accepted. Thereafter forty-nine shares of stock were issued to plaintiff and one to defendant.

On August 2, 1916, plaintiff was the owner of twenty-eight shares of the capital stock of the company. He then entered into an agreement in writing with defendant, by which the latter agreed to pay him for the stock $5,000 in cash and $2,400 by a promissory note, payable in one year. The cash payment represented practically plaintiff's total investment in the company; the note represented the amount allowed plaintiff for interest thereon and profit. Defendant was given six months within which to make the $5,000 payment. The agreement provided in part:

" For the purpose of carrying out this agreement, it is hereby stipulated as follows: The party of the first part [plaintiff] has this day deposited with the party of the third part as Trustee, [plaintiff's attorney] the said twenty-eight shares of the common stock of the Kumaron Company, Inc. together with resignations by himself and Mr. Bert Reese as directors and officers of the Kumaron Company, Inc.

" And the party of the second part [defendant] has deposited with the party of the third part his certain promissory note for the sum of $2,400 payable as aforesaid and does hereby agree as follows: that upon the payment to the party of the third part of the sum of $5,000 together with a counsel fee to him as such Trustee and as attorney for the party of the first part of the sum of $250 that he may and hereby agrees to deliver to the party of the second part the said twenty-eight shares of stock in said Kumaron Company, Inc., without any further claim or charge of any character, nature or description."

On August 2, 1916, plaintiff and Reese executed resignations as officers and directors of the corporation. Plaintiff received the $5,000 by check on November 24, 1916, and he admits it was the check of the DuPont Company as he noticed after he left the building where the payment was made by defendant's attorney. On the same day the directors of the corporation met and the resignations of plaintiff and Reese were accepted and successors elected to them.

Plaintiff accepted $2,000 in payment of the $2,400 promissory note, three months in advance of its maturity. His stock was duly turned over to defendant by the trustee named in the agreement of purchase.

The alleged fraudulent misrepresentations claimed to have been made by defendant and his attorney consisted in statements alleged to have been made by them that " the business of said copartnership could no longer proceed without new interests and additional capital," and that plaintiff must be eliminated from the corporation if the new capital was to be interested. The alleged concealment was in withholding from plaintiff knowledge of what defendant well knew, viz., that the DuPont Company " intended to and would purchase the said inventions, rights and letters patent and the manufacturing plant of the said copartnership business for a cash consideration and royalties, and that large profits would enure to the seller thereof; " that one of the conditions of purchase was that plaintiff's interest should be properly released; and that the negotiations with the DuPont Company were being conducted and that it " might or would " purchase the inventions, having made extensive tests and investigation of the products made thereunder.

The first and insuperable objection to a recovery in this action is, that it is based upon an absolutely false and baseless theory of the relations of the parties thereto. They never were copartners. They were both stockholders in the same corporation, which was organized for the express purpose of carrying on the business venture

in which they were engaged. All the requirements of law were observed in the formation of this corporation and the conduct of its business. There cannot be two relationships existing between the parties at the same time in reference to the same business, a corporate one, to avoid personal liability, and a personal one, involving the identical subject matter, without agreement of any kind. In *Thomashefsky* v. *Edelstein* (192 App. Div. 368) Mr. Justice PAGE said (at p. 369): "The plaintiff has brought this action on the theory that the parties were copartners and that the corporation was a mere empty shell or cloak thrown around their copartnership operations, and prays that the copartnership be dissolved, a receiver appointed and the People's Producing Co., Inc., be required to account for and deliver over to such receiver all the property in the possession or standing in the name of People's Producing Co., Inc., and for an accounting. An interlocutory judgment in accordance with the prayer of the complaint has been granted.

"It is true, as urged by the learned counsel for the respondent, that equity will disregard the forms of a corporation in certain cases, and treat the parties as copartners; but that is only done where the interests of justice require and the facts warrant such action. This does not mean that one party can at will turn the relation of stockholders in a corporation into members of a copartnership. Where parties engaged in business have incorporated their business, and are using the corporation as a cloak to accomplish some fraudulent purpose, a court of equity will disregard the corporate form and enforce the individual liability of copartners. In this case no fraud is alleged or proved.

"The proof does not show that the parties ever entered into a copartnership. The feasibility of forming such a relation was discussed, and they met at the attorney's office with that end in view, but instead of forming a copartnership the parties elected to transact their business under corporate forms with freedom from individual liability, and they did so."

In *Boag* v. *Thompson* (208 App. Div. 132) Mr. Justice MANNING said (at p. 135): "From the foregoing it thus appears that the sole aim of the plaintiff in this case is to invoke the aid of a court of equity in securing to him from the several corporations the rights and remedies to which he would be entitled under a ' partnership ' or ' joint venture,' on the ground that the several corporations are engaged in partnership transactions through corporate forms. There is no principle of law which warrants this view, and hence the complaint fails to state a cause of action justifying an injunction.

"It appears here, without dispute, that the plaintiff is a stock-

holder in these different corporations, and his own declaration is to the effect that while there never was a copartnership, there existed what he terms a 'joint venture.' Even if this be so; the same rules of law apply to joint ventures as to partnerships. His only remedy, so far as I can see, is under the corporation laws of this State in an action by the corporation itself, or in a stockholder's action. He cannot be a stockholder and seek relief as a copartner or as a joint venturer, for surely he is either one or the other.

" Legal principles governing a situation of the kind presented before us by this record have been decided in numerous cases, notably in the case of *Jackson* v. *Hooper* (76 N. J. Eq. 592, 598), where Judge Dill, speaking for the court, says: ' It is claimed, however, that these owners of all the stock were really copartners, doing business in corporate form for their own convenience, and that a court of equity has the power to control the property and affairs of the companies even to the extent of eliminating the corporate functions and powers as mere incidents and wholly disregarding the substantive law governing the creation, supervision and dissolution of corporations. We cannot subscribe to any such doctrine. An agreement or course of dealing by which corporations are organized for the purpose of using them merely as agencies or instrumentalities, or forms in the conduct of a copartnership or joint business, and by the consent of the parties in interest to be independent of statutory control, cannot be recognized, enforced or perpetuated by the Court of Chancery in this State. * * * The law never contemplated that persons engaged in business as partners may incorporate, with intent to obtain the advantages and immunities of a corporate form, and then, Proteuslike, become at will a copartnership or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require. The policy of the law is to the contrary. If the parties have the rights of partners they have the duties and liabilities imposed by law and are responsible *in solido* to all creditors. If they adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world. Furthermore, upon grounds of public policy, the doctrine contended for cannot be tolerated as it renders nugatory and void the authority of the Legislature — a coördinate branch of the government — established by the Constitution in respect to the creation, supervision and winding up of corporations.'

" To the same effect see the very interesting case of *Brock* v.

*Poor* (216 N. Y. 387), where Judge HISCOCK examined the subject and cited many relevant decisions. Among other cases he cited *Jackson* v. *Hooper* (*supra*). (See, also, *Seitz* v. *Michel*, 148 Minn. 80; 181 N. W. Rep. 102; 12 A. L. R. 1060.) "

The learned counsel for plaintiff upon the argument conceded that the theory of a partnership was untenable and the same admission is contained in effect in his brief. But he contends that defendant is still liable for breach of his duty as a fellow-stockholder of plaintiff.

The first answer to this is, that the decision which is the basis of the interlocutory judgment herein is founded upon the erroneous theory that the relations between the parties were those of partners in a partnership. This the decision finds as a fact:

" *Twentieth:* That the said agreement of August 2nd, 1916, was executed by the plaintiff in ignorance of the facts, concealed from the plaintiff and in reliance upon the misrepresentations made to the plaintiff, and was executed because of plaintiff's implicit confidence in the defendant as his partner, and by reason of his belief that the defendant was dealing with him in a full realization of the obligations due and owing from defendant to the plaintiff as a partner and in the belief that the defendant would treat fairly with the plaintiff and would not request any action by the plaintiff which would, to the defendant's knowledge, bring a benefit to the defendant which by right belonged to the plaintiff."

The second conclusion of law is as follows: " That the plaintiff and defendant were copartners and that the Kumaron Company, Inc., was a corporation formed by the said copartners for the purpose of conducting the copartnership business, and was formed pursuant to the agreement of the copartners and continued to be in reality though not in form a copartnership business."

The sole ground upon which defendant's liability was predicated was, that he had violated his duty to plaintiff as a partner. No such relationship existed, and no such duty arose on account thereof. It is significant of the confusion existing as to the supposed status of the parties, that though, if they were partners, their share of the profits would have been equal, the decision awards plaintiff twenty-eight-fiftieths of the emoluments of the DuPont contract, which fraction represents his stock ownership in the corporation.

The second answer to plaintiff's contention is, that upon the record we are convinced that there was neither fraudulent misrepresentation nor fraudulent concealment by defendant. The testimony and letters satisfy us that plaintiff knew that negotiations were going on with outside interests for a sale of the business, including the patents, and specifically knew that the DuPont

Company was one of the parties with whom defendant was negotiating. The agreement he made with the defendant gave the latter six months to make the cash payment, evidently to enable him to effect a sale of the business with a knowledge of how much he had to pay plaintiff for his stock. Plaintiff was perfectly content to get his investment back in cash, with a note representing a liberal profit, particularly in view of the fact that the enterprise was unsuccessful and could not continue without new cash advances which plaintiff was unwilling to make. In fact it never made money. Plaintiff knew, by his own admission, that he was being paid for his stock by the check of the DuPont Company, within a few minutes at least after he received it. He says he then " had a suspicion that there was something wrong." But on March 30, 1917, he wrote a letter to defendant's wife asking her to help get her husband to pay his $2,400 note, in the course of which he says: " The only reason I took note for $2,400.00 as part payment, and without interest, was thought I was under the impression that Mr. Eichler did not get any money as cash consideration. He however did receive a cash consideration and while he gave me $5,000 at the time he closed the deal I see no reason why I should wait until the remainder of the year for this money. I am much in need of funds at this time and anything you can do to get Mr. Eichler to see this matter in the right light will certainly be appreciated by me. Mr. Eichler has never even answered my letters. I don't think under the circumstances I have earned such treatment. Mr. Eichler knows the money I advanced him is greatly responsible for his present connection, and I feel he ought to show some appreciation by helping me out at this time, as I helped him out when he was in need."

The only conclusion to be reached upon this record is, that plaintiff well knew, in substance at least, what was going on and defendant's efforts to dispose of the business, and did not care to whom it was sold as long as he got his investment back, with interest.

The third answer to plaintiff's contention is, that at the time the agreement between him and defendant was entered into (August 2, 1916) there was in fact no agreement or understanding reached with the DuPont Company for the purchase of the patents and business of the corporation. In fact defendant was then in negotiation with several other interests. The negotiations with the DuPont Company had lasted in all six or eight months, but became serious on June 12, 1916, when their representative called at the corporation's office to inquire if he was willing to sell out, and also to investigate the commercial value of the patents; he

then asked defendant to name the terms upon which he was willing to sell the business, and the latter promised he would consider the terms he would offer for such sale. Other interviews followed. But defendant testifies that he did not know until almost eight days before the agreement with the DuPont Company was signed (on November 24, 1916) that his terms had actually been accepted. The correspondence with the company demonstrates that down to the date of the last letter of November fourteenth, defendant could not have known that the executive committee of the DuPont Company had actually accepted his proposition.

The fourth answer to plaintiff's contention is, that upon the record defendant's testimony that plaintiff knew all about the former's efforts to sell the patents and business to the DuPont Company should be accepted. It is consistent with plaintiff's actions after he claims he discovered that the DuPont Company had bought out the business and his letter urging payment of his note, but making no other demand upon defendant. In fact he did not commence this action until May 28, 1919.

The judgment appealed from should be reversed, with costs to appellant, and judgment entered in favor of the defendant, with costs. The conclusion reached requires the reversal of practically all the findings of fact and conclusions of law contained in the decision. Let new findings and conclusions be submitted in conformity with this opinion.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of defendant, with costs. Settle order on notice.