## ROBERTS v. SAN JACINTO SHIPBUILD-ERS, Inc., et al.

### No. 11831.

Court of Civil Appeals of Texas. Galveston.

Dec. 18, 1946.

Rehearing Denied Jan. 9, 1947.

Woodul, Arterbury & Folk and Howard S. Hoover, all of Houston (Roy L. Arter-

bury, of Houston, of counsel), for appellant.

K. C. Barkley, of Houston, for San Jacinto Shipbuilders, Inc.

J. L. Webb, of Houston, for H. C. Cockburn.

GRAVES, Justice.

This appeal is from a judgment of the 11th District Court of Harris County (Hon. Ewing Boyd sitting as Judge thereof), in cause No. A—316372 upon the docket of that court, wherein the appellant here, John I. Roberts, had sought recoveries against the appellees here, jointly and severally, San Jacinto Shipbuilders, Inc., and H. C. Cockburn, as an individual, upon an alleged contract of employment of him by them, in answer to which, among other pleadings, both appellees had separately interposed special exceptions to the appellant's petition against them each, attacking it as having declared upon a claimed agreement that violated the public policy of the State of Texas, and was void.

The trial court, after hearing the special exceptions before any trial upon the merits, sustained them in the appealed-from order, the material portion of which was this:

"The court is of the opinion that the exceptions of the San Jacinto Shipbuilders, Inc., and of the defendant, H. C. Cockburn, to plaintiff's petition, on the ground that plaintiff's said petition states no cause of action upon which relief can be granted to the plaintiff, should, in all things, be sustained.

"It is therefore, Ordered, Adjudged, and Decreed by the Court that the aforesaid exceptions of the defendants, San Jacinto Shipbuilders and H. C. Cockburn, be and the same are in all things sustained, and said cause is hereby dismissed, plaintiff declining to amend."

As this court understands its action that court based its holding that the appellant's petition stated no cause of action against either of the appellees upon the sole conclusion that it was vulnerable to the special exceptions going to the one indictment against it that, as pled, the petition upon its face declared upon an alleged contract that contravened the public policy of Texas, hence was null, void, and unenforceable.

The appeal, therefore, presents to this court the single question of law as to whether or not the contract declared upon did so offend against the public policy of Texas. 10 Texas Jurisprudence, page 191.

In the main, and substantially, the appellant's petition was this:

"Plaintiff and defendant H. C. Cockburn have for many years been known to each other and were friends of long standing.

"That said H. C. Cockburn at said conference stated to plaintiff that the San Jacinto Shipbuilders, Inc., had a capitalization of only a few thousand dollars and that he, Cockburn, and his family owned or controlled all or practically all of the capital stock of the San Jacinto Shipbuilders, Inc..

"Cockburn further stated that in addition thereto, he personally guaranteed $300,-000.00 credit to the National Bank of Commerce in Houston, Texas, for the use and benefit of San Jacinto Shipbuilders, Inc., in the performance of said contract with the Maritime Commission.

"Defendant Cockburn at said conference further stated that it was impossible for him to give the necessary time and effort to the management and control of the affairs of the San Jacinto Shipbuilders, Inc., for the reason that his time was all taken up in the handling of other extensive business interests.

"Defendant Cockburn at said time further stated that he understood little or nothing about the shipbuilding business and that something had to be done promptly to avoid disaster to the San Jacinto Shipbuilders, Inc., and to avoid enormous losses to the defendant Cockburn by reason of his connection with said corporation, as hereinbefore outlined.

"At said meeting defendant Cockburn made to this plaintiff the following proposition, which was accepted by plaintiff, to-wit:

"That plaintiff was to resign his position with the Government and become the Executive Vice-President and Comptroller of

490

San Jacinto Shipbuilders, Inc., at a salary of $7,500.00 for one year's service, to be paid by San Jacinto Shipbuilders, Inc., and additional salary of $4,500.00 for one year's service as Executive Vice-President and Comptroller to be paid by Cockburn personally. That plaintiff in his position as Executive Vice-President and Comptroller would be working directly under Cockburn as President of the Company, and that plaintiff should report directly to Cockburn.

"That Cockburn would pay to plaintiff not only the $4,500.00 salary for the one year's service above referred to, but that he would also pay to plaintiff the sum of $7,500.00 if for any reason the same was not paid to plaintiff by San Jacinto Shipbuilders, Inc., and in addition thereto, Cockburn promised and agreed with plaintiff that he would promptly increase the capital stock of San Jacinto Shipbuilders, Inc., to $100,000.00 fully paid in and that he, Cockburn, would immediately after the increased capitalization of the company to $100,000.00 was approved by the proper officials of the State of Texas, deliver, transfer, convey and grant to plaintiff, as plaintiff's own property, and in his own right, title and estate, as additional compensation for his one year's service, capital stock of said San Jacinto Shipbuilders, Inc., of the value of $25,000.00 upon the agreed date of such delivery of said capital stock.

"Plaintiff, having been on friendly terms for years with Cockburn, accepted said offer and proposition so made to him by defendant Cockburn, and, relying upon his said agreement with Cockburn, this plaintiff promptly resigned his position with the United States Government. Immediately after resigning his position with the Government and before leaving Washington, plaintiff, at the request of Cockburn, entered upon the performance of his duties under said contract.

"That while the offer and acceptance was oral, Cockburn agreed at a later date that he would confirm it in writing, and in due course, said contract was put into the form of a written contract, which said contract was thereafter made and executed by plaintiff and defendant Cockburn.

"Cockburn also stated at said conference that in plaintiff's position as executive vice-president and comptroller, plaintiff would be working directly under Cockburn as president and that plaintiff should report directly to Cockburn.

"Plaintiff further alleges that the defendant Cockburn in all of the matters herein alleged was acting for himself individually and as the President and duly authorized agent and representative of San Jacinto Shipbuilders, Inc.

"Plaintiff says that he faithfully performed all of the duties and obligations to the San Jacinto Shipbuilders, Inc., and to defendant Cockburn.

"Plaintiff further says that defendant Cockburn failed and refused to deliver, transfer, assign and grant to plaintiff capital stock of the San Jacinto Shipbuilders, Inc., of the value of $25,000.00 as he had promised and agreed to do.

"That he performed all of the duties and obligations imposed upon him under the terms of his contract of employment and was ready, able and willing to continue to perform all legal obligations and duties required of him by his contract of employment for the remainder of the one year employment period for which he had been employed and as provided for in his contract made with defendant Cockburn, acting for himself and for San Jacinto Shipbuilders, Inc.

"Plaintiff says that by reason of the matters and facts hereinbefore alleged, defendant H. C. Cockburn is indebted to plaintiff and has damaged this plaintiff in the sum of $37,000.00."

The substance and effect of the appellees' special exceptions, as stated by themselves, on the other hand, respectively, were these:

"To appellant's petition, appellees specially excepted on the ground that the petition stated no cause of action upon which relief could be granted because it appeared from the face of said petition that the contract, if any, was and is against the established public policy of the State of Texas, in that it was a contract between appellant and appellee Cockburn, wherein the aforesaid Cockburn engaged the serv-

ices of appellant as an officer and director of the defendant corporation for a specified term at a fixed salary and because, under the terms of the contract, appellant was to service the personal interest, as an officer and director of the defendant corporation, of the defendant Cockburn; and further, because it is clear from the petition that the contract alleged was one in which appellant and appellee Cockburn individually were to usurp and take over the affairs of the defendant corporation for a specified term at a specified salary to be paid by Cockburn individually; and further, because the contract provided for dual representation by the plaintiff, for which dual representation he was to be paid separately by the defendant corporation and the defendant Cockburn; and further, because the contract evinced a plain attempt between plaintiff and defendant Cockburn to bargain away in advance the judgment which the law contemplates that an officer and director of a corporation should at all times, subsequent to his appointment, exercise; and because the agreement by Cockburn that he personally would pay plaintiff $29,-500.00 for his services as executive vice-president and comptroller might tend to influence the appellant and appellee Cockburn in the exercise of their judgment with sole regard to the interest of the corporation, should such interest conflict with the interest of the defendant corporation; and further, because that portion of the contract which obligated Cockburn to donate 25% of the capital stock to the appellant was in violation of the law and in fraud of the rights of the stockholders."

■ Mindful of its duty, as indicated, to determine as a matter of law as to whether or not the contract in suit was contrary to public policy (Pierce v. Randolph, 12 Tex. 290), this court is constrained to follow the able trial court in holding that it was.

There is nothing shadowy, elusive, or intangible about the public policy of Texas touching the field of transactions and activities covered by the contract here under review; on the contrary, it is well settled, as evidenced by and deduced from our Constitution, statutes, and judicial decisions; 10 Tex.Jur., Contracts, pars. 109 and 110.

Especially has it been declared in a series of statutes governing private corporations, to the extent that he who runs may read, to-wit: Revised Civil Statutes, Title 32, Chapters 1 to 19a, inclusive, and particularly, as applicable here, Articles 1308, 1323, 1325, 1327 and 1330.

Art. 1308 prescribing the detailed conditions under which the capital stock may be subscribed, issued, owned, and valued;

Art. 1323 providing that the corporation's business shall be transacted by a majority of its board of directors, how they are to be elected, etc.;

Art. 1325 requiring that the directors shall choose one of their number president, and appoint a secretary and treasurer, and other officers;

Art. 1327 conferring the general management of the corporation's affairs upon its board of directors, with power to dispose of its unsubscribed stock, etc.;

Art. 1330 providing that the board of directors, or other managing officers, may increase its authorized capital stock, under what conditions, etc.

Without repeating any of its recitations, since this contract, as pled, has been quoted almost in full, it is held to have been against public policy in these, among other particulars:

■ (1) It bound Cockburn in advance of a directors' meeting to elect Roberts to an office in the corporation at a stipulated salary of $7,500.00 for one year's time, when, by the applicable Texas statute, the corporation was entitled to Cockburn's vote and judgment at all directors' meetings uninfluenced by any prior agreements or commitments on his own part, and always to vote for the interest of the corporation, irrespective of whether or not it might result in the employment of Roberts according to any prior agreement between himself and Cockburn. 10 Tex.Jur., p. 191; State v. Jensen, 178 Iowa 1098, 160 N.W. 832, L.R.A.1917C, 455; Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 188; Fletcher on Corporations, Vol. 5, p. 444; Homblen v.

Horowitz Texan Theatre Co., Tex.Civ. App., 162 S.W.2d 455; Seitz v. Michel, 148 Minn. 80, 181 N.W. 102, 12 A.L.R. 1060–1068; Van Slyke v. Andrews, 146 Minn. 316, 178 N.W. 959, 12 A.L.R. 1068–1074; Hellier v. Achorn, 255 Mass. 273, 151 N.E. 305, 45 A.L.R. 795; Withers v. Edwards, 26 Tex.Civ.App. 189, 62 S.W. 795; 3rd Hildebrand on Texas Corporations, p. 92.

■ (2) Under it Cockburn contracted with Roberts, in advance of any directors' meeting of the corporation, to the purport that if he, Cockburn, failed to get the corporation's directors to elect Roberts as Executive Vice President and Comptroller thereof, at a salary of $7,500.00 for one year, that he, Cockburn, would personally pay Roberts that sum. Seitz v. Michel, supra, 148 Minn. 80, 181 N.W. 102, 12 A.L.R. 1066, second column; Annotations in 12 A.L.R. 1070–1074; Funkhouser v. Capps, Tex.Civ.App., 174 S.W. 897–900; Cook on Corporations, (7th Ed.), § 622A.

These authorities condemn such contracts because the tendency would be to cause the maker of it to vote for the election of a party to a corporate office to avoid personal liability against himself, or a suit for damages.

■ (3) It directly and unconditionally obligated Roberts to serve two employers—that is, the corporation and appellee Cockburn personally—at the same time, in consideration of different and distinct compensations to be paid him by them respectively. Elliott on Contracts, §§ 748 to 751; West v. Camden, 135 U.S. 507, 10 S.Ct. 838, 34 L.Ed. 254; State v. Jensen, 178 Iowa 1098, 160 N.W. 832, L.R.A.1917C, 455; Dial v. Martin, Tex.Civ.App., 37 S.W.2d 166, 188; McGourkey v. Toledo & O. C. R. Co., 146 U.S. 536, 552, 13 S.Ct. 170, 36 L.Ed. 1079; 13 Am.Jur., p. 955, par. 1002; Cook v. Millers, Ind.Und., Tex.Com.App., 240 S.W. 535; Hildebrand on Texas Corporations, Vol. 3, pp. 41–43; Edwards v. Keller, Tex. Civ.App., 133 S.W.2d 823.

■ (4) Finally, having been thus void and unenforceable, the contract declared upon was not susceptible of ratification as a result of any of the things either party thereto may have done toward performance thereof under the assumption that it was a legally valid undertaking between them. Hildebrand on Texas Corporations, Vol. 1, § 133, p. 344; 13 Am.Jur., § 980, p. 932, and § 984, p. 939; United Order of Good Samaritans v. Meekins, 155 Ark. 407, 244 S.W. 439, 28 A.L.R. 89; Brown v. First Nat. Bank, 137 Ind. 655, 37 N.E. 158, 24 L.R.A. 206; Despatch Line of Packets v. Bellamy Mfg. Co., 12 N.H. 205, 37 Am. Dec. 203; 10 Tex.Jur., pp. 260—1.

Nor could either party thereto, even though both may have been in good faith in entering into it, have had any dependable ground for regarding it as valid in the first instance; Cockburn alone—and there is no claim that any other stockholder, although there were others—had no power under the Texas statute either to increase the capital stock of the corporation to $100,000.00, or to elect appellant, or anybody else, to an office or directorship in it. These were prerogatives of its duly-constituted board of directors only.

Some of the authorities appellant has cited have upheld somewhat similar undertakings to this one, where all the stockholders of the corporation concerned had in advance known all about and had with such knowledge fully approved of it; but, obviously, this is no such case.

No extended nor further discussion is deemed necessary, since these conclusions determine the merits of the appeal. They require that the judgment appealed from be affirmed; it will be so ordered.

Affirmed.