**In re NUVEEN FUND LITIGATION.**

No. 94 C 360.

United States District Court,
N.D. Illinois,
Eastern Division.

June 20, 1994.

951

Marvin A. Miller, Kenneth A. Wesler, Jennifer A. Winter, Miller, Faucher, Chertow, Cafferty & Wexler, Chicago, IL, Robert Harwood, Wechsler, Skirnick, Harwood, Halebian & Feffer, Bruce E. Gerstein, Barry Taus, Noah Silverman, Garwin, Bronzaft, Gerstein & Fisher, New York City, and Elwood S. Simon and John P. Zuccarini, Elwood S. Simon & Associates, Bloomfield, MI, for plaintiff.

Jerold S. Solovy, Keith F. Bode, J. Kevin McCall, Avidan J. Stern, Jenner & Block, and Allan Horwich, Roger Pascal, Joseph J. Krasovec, III, and David A. Makarechian,

Schiff, Hardin & Waite, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.

Plaintiffs T.R.V. Holding Company and Seymour Specter bring this suit on behalf of all persons who owned shares of the Nuveen Municipal Value Fund, Inc. ("the NUV fund") or the Nuveen Premium Income Municipal Fund, Inc. ("the NPI fund") (collectively, "the Nuveen funds") on November 8, 1993. First Consolidated and Amended Class Action Complaint ("Complaint") ¶ 2. Defendants are the Nuveen funds' seven directors, Richard J. Franke, Donald E. Sveen, Frank P. Wendt, Lawrence H. Brown, John O'Toole, Margaret K. Rosenheim, and Peter R. Sawers ("the directors"); the Nuveen funds' investment advisor, Nuveen Advisory Corporation ("Nuveen Advisory"); and the investment advisor's controlling parent corporation, John Nuveen & Company, Inc. ("Nuveen"). *Id.* ¶¶ 14–27.

Plaintiffs contend that defendants' decision to issue rights to new shares of stock in the Nuveen funds diluted plaintiffs' ownership interests in the Nuveen funds and was made only to increase Nuveen Advisory's management fees and generate underwriting fees for Nuveen. *Id.* ¶ 5. Plaintiffs' three-count complaint alleges that defendants breached their fiduciary duties in approving, announcing, implementing and completing these offerings. Defendants move to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

## *BACKGROUND*

Nuveen is a multi-million dollar investment banking and investment advisory firm. Complaint ¶¶ 15, 34. Nuveen is the largest manager of closed-end municipal bond funds in the United States, controlling 82 funds and $32.6 billion in assets. *Id.* ¶ 34. Closed-end bond funds generally do not issue new shares after their initial offering; expansion is usually through the gradual increase in the value of the underlying portfolio.[1] *Id.* ¶ 37. The NUV and NPI funds are both closed-end,

1. In contrast, open-end bond funds continually    offer new shares to the public. Complaint ¶ 37.

diversified management investment companies registered under the Investment Company Act in the State of Minnesota. *Id.* ¶¶ 10–11. Prior to the offerings in issue, the NUV fund, a $1.8 billion closed-end fund that invests in tax-exempt municipal bonds, had 166 million shares of common stock outstanding. *Id.* ¶¶ 1, 10. Prior to the offerings, the NPI fund, a $1.2 billion leveraged, closed-end fund that invests in tax-exempt municipal bonds, had 53 million shares of common and 3,500 shares of preferred stock outstanding. *Id.* ¶¶ 1, 11.

Nuveen's closed-end municipal bond funds account for at least 78 percent of Nuveen's business. *Id.* ¶ 35. Nuveen profits on the closed-end municipal bond funds in two ways: (1) underwriting fees for new funds and (2) management fees based on a percentage of the assets managed by Nuveen Advisory, its wholly-owned subsidiary. *Id.* The management fees generated by Nuveen Advisory constitute approximately 75 percent of Nuveen's total revenues. *Id.*

Plaintiffs claim that Nuveen's future growth through the creation of new closed-end municipal bond funds has been threatened by market saturation, declining investor interest, and high bond prices. *Id.* ¶¶ 39–45. Plaintiffs contend that by the fall of 1993, Nuveen's performance had stagnated along with the closed-end bond fund market. *Id.* ¶¶ 46–49. Earnings have been below analysts' projections, Nuveen's stock has been downgraded, and industry publications have noted the slowdown. *Id.* ¶¶ 48–54. Defendants began to feel the impact of the downturn and pressure to take action to turn the situation around. *Id.* ¶¶ 55–58. Thus, plaintiffs allege that defendants resorted to raising capital from the shareholders of its existing Nuveen funds through coercive rights offerings. *Id.* ¶¶ 59–64.

On November 8, 1993, defendants announced that the Nuveen funds would offer rights to new shares enabling Nuveen funds' shareholders to purchase additional shares. *Id.* ¶ 60. Specifically, the offerings allowed each NUV or NPI fund shareholder to purchase one additional share for every three shares already owned. *Id.* ¶ 66. Under the offerings, the NUV fund could have issued up to 55 million new shares, increasing its outstanding shares by 33 percent; the NPI fund could have issued up to 17.7 million new shares, increasing its outstanding shares by 33 percent. *Id.* ¶¶ 3–4. In fact, only about half of the offered new shares were purchased. Approximately 28.3 percent of the NUV fund's shareholders exercised their rights, subscribing to 26.3 million new shares or 47.9 percent of the new shares offered. *Id.* ¶ 89. Similarly, approximately 32.4 percent of the NPI fund's shareholders exercised their rights, subscribing to 10 million shares or 57.2 percent of the new shares offered. *Id.*

Plaintiffs allege that defendants' November 8, 1993 announcement stemmed from pressure for growth and that the offerings were instituted for Nuveen's benefit rather than for the benefit of the Nuveen funds' shareholders. *Id.* ¶¶ 59–60. Specifically, plaintiffs claim Nuveen directly benefited from the offerings by receiving substantial underwriting fees and indirectly benefited from the offerings because Nuveen Advisory, Nuveen's wholly-owned subsidiary, will receive significantly greater management fees due to the Nuveen funds' increased assets under Nuveen Advisory's management. *Id.* ¶ 16.

Plaintiffs assert that the offerings harmed the Nuveen funds' shareholders. The price for the new shares was set at:

> the lesser of (A) the net asset value per common share as of the date of the expiration of the offering (the "pricing date") or (B) 95% of the average of the last reported sale prices of a common share on the New York Stock Exchange on the pricing date and the four (4) preceding business days.

*Id.* ¶ 66. Plaintiffs explain that the pricing structure guaranteed that the new shares would be sold at a price below both the Nuveen funds' per share net asset value and per share market price. *Id.* ¶¶ 67–69. Plaintiffs contend that the November 8, 1993 announcement of the offerings placed downward pressure on the trading price for the Nuveen funds' shares in the months before the final price was determined on January 21, 1994. *Id.* ¶¶ 68, 71–80. Plaintiffs also contend that the challenged offerings gave

shareholders three choices, all of which caused shareholders harm: (1) invest more money in the Nuveen funds and minimize their net asset value dilution; (2) refrain from investing more money in the Nuveen funds and suffer dilution from the addition of new shares and the deduction of underwriting fees; or (3) sell their Nuveen fund shares in an intentionally depressed market and suffer losses. *Id.* ¶¶ 82–85.

Plaintiffs allege that defendants designed the offerings in a manner guaranteed to dilute shareholder proportionate ownership in the Nuveen funds. *Id.* ¶ 65. Plaintiffs claim dilution of: shareholder proportionate ownership of assets, shareholder proportionate voting rights and/or control, the per share net asset value of shareholder investments, and the market value of shareholder investments. *Id.* Count I alleges that the directors and Nuveen Advisory violated their fiduciary duties under Section 36(a) of the Investment Company Act of 1940, which states in pertinent part:

> The [Interstate Commerce] Commission is authorized to bring an action in the proper district court of the United States ... alleging that a person serving or acting in one or more of the following capacities has engaged ... in any act or practice constituting breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts—
>
> (1) as officer, director, member of any advisory board, investment adviser, or depositor....

15 U.S.C. § 80a–35(a). Count II alleges that Nuveen and directors Franke and Sveen aided and abetted a breach of fiduciary duty. In Count III, plaintiffs claim that the directors and Nuveen Advisory breached their fiduciary duties in violation of Minnesota law.[2]

### DISCUSSION

■ When considering a motion to dismiss pursuant to Rule 12(b)(6), this court must accept all well-pleaded facts as true, draw all inferences in favor of plaintiffs, and view plaintiffs' allegations in the light most favorable to them. *See, e.g., Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 626 (7th Cir.1993); *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). Thus, this court may only grant a motion to dismiss if it appears beyond doubt that plaintiffs can prove no set of facts entitling them to relief. *Venture Assocs. v. Zenith Data Systems,* 987 F.2d 429, 432 (7th Cir.1993); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Defendants raise two categories of arguments against plaintiffs' suit: (1) plaintiffs lack standing to raise all or some of the counts in their complaint, and (2) even if plaintiffs have standing, their complaint fails to state a claim upon which relief may be granted.

■ First, defendants argue that plaintiffs' allegations are derivative in nature and must be asserted in a shareholder derivative suit, *i.e.,* that plaintiffs' claims may not be brought by plaintiffs directly but must instead be brought by plaintiffs on behalf of the Nuveen funds of which plaintiffs are shareholders. A shareholder derivative suit permits an individual shareholder to enforce a cause of action that belongs to the corporation against corporate officers or directors or third parties. *See, e.g., Kamen v. Kemper Financial Serv., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 1715, 114 L.Ed.2d 152 (1991). Defendants contend that plaintiffs' entire complaint must be dismissed because plaintiffs' claims are derivative in nature and plaintiffs filed a direct suit rather than a shareholder derivative suit in compliance with Fed.R.Civ.P. 23.1. Plaintiffs argue that they need not comply with Fed.R.Civ.P. 23.1 because their suit is direct rather than derivative.

**2.** By its caption, Count III purports to allege that all defendants breached their fiduciary duties under Minnesota law. However, the description of the claim states that "[t]his claim is asserted against Defendants Nuveen Advisory Corp., Richard J. Franke, Donald E. Sveen, Frank P. Wendt, Lawrence H. Brown, John E. O'Toole, Margaret K. Rosenheim, And [sic] Peter R. Sawers."

The Nuveen funds were incorporated in Minnesota, so Minnesota law governs whether plaintiffs' claims are direct or derivative. *See* Complaint ¶¶ 10–11; *Kamen*, 500 U.S. at 97–99, 111 S.Ct. at 1716–18 (citations omitted) (holding that although the Investment Company Act is a federal statute, nonconflicting state law, including state corporate law, must be incorporated into the federal rule of decision). The Minnesota Supreme Court and the United States Court of Appeals for the Eighth Circuit have held that under Minnesota law, a claim belongs to the corporation if the injury to each shareholder "is of the same character." *Seitz v. Michel*, 148 Minn. 80, 181 N.W. 102, 105 (1921). In *Seitz*, the Minnesota Supreme Court established the test for distinguishing between individual and derivative claims. The Eighth Circuit recently reaffirmed the *Seitz* analysis in *Arent v. Distribution Sciences, Inc.*, 975 F.2d 1370, 1372–73 (8th Cir.1992).

Seitz was a minority shareholder and Michel was the majority shareholder in a number of corporations; Seitz was also employed by the corporations. *Seitz*, 181 N.W. at 103. After over twenty years in business together, Michel ousted Seitz from the management of the corporations. *Id.* Seitz sued Michel, alleging that after the ouster, Michel had engaged in a plan to dissipate the surplus and profits of the corporations by paying excessive salaries and bonuses to himself and others, thus reducing the value of Seitz' interest in the corporations. *Id.* The Minnesota Supreme Court ruled that Seitz' direct suit was inappropriate because the alleged reduction in assets harmed the corporation directly and Seitz only indirectly; Seitz should have brought a derivative suit. *Id.* at 105. The *Seitz* court explained:

> The remedy for defendant's alleged diversion of corporate funds is not an individual action against him for consequential damages. The wrongs complained of are wrongs against the corporation. The funds diverted should be restored to the corporations. The right of action is in them.... A minority stockholder may sue because the corporations are under the control of the alleged wrongdoers, but he must sue in a representative capacity for the benefit of the corporations, and not for the damages to him individually.
>
> ... The wrong is done when the funds are improperly expended. Such funds do not belong to the stockholders, but to the corporation. The wrong results in injury to the stockholders collectively. Money which might have been distributed among them as dividends has been wasted. The value of all the stock has been diminished. *The injury to each stockholder is of the same character.*
>
> .    .    .    .    .

*Id.* (emphasis added).

The *Seitz* court did not deny the existence of individual suits by shareholders against corporate officers. Instead, the *Seitz* court noted that "[i]f the injury is solely to [an individual stockholder], no doubt he may sue in his own right." *Id.; see also International Broadcasting Corp. v. Turner*, 734 F.Supp. 383, 392 (D.Minn.1990) (holding that "[w]hether a claim is properly brought as an individual action rather than derivative turns on whether the claimant has suffered an injury distinct from one incurred by the corporation").

■ Here, plaintiffs' claim is that defendants diluted the net asset value and market value of the Nuveen funds' shareholders' investments by approving, announcing, implementing and completing these offerings. Complaint ¶¶ 5, 7. Plaintiffs' alleged injuries are not distinct from the alleged injuries to all the Nuveen funds' shareholders. The defendants' actions were the same with respect to all the shareholders. Plaintiffs allege that *all* the Nuveen funds' shareholders were harmed because the offerings caused the Nuveen funds' per-share value to decline and the fees paid by the Nuveen funds to cover the costs of the offerings (underwriting and advisory services) have siphoned money out of the Nuveen funds to defendants. An injury shared by all the shareholders of a corporation cannot be personal to each shareholder. Defendants' assertion that *all* the shareholders' investments were harmed is the same as saying that the Nuveen funds themselves were harmed.

Plaintiffs rely on their allegation that defendants caused a dilution in shareholders' proportionate voting rights to establish that the injuries alleged are direct injuries to shareholders rather than direct injuries to the Nuveen funds and indirect injuries to their shareholders. Plaintiffs' reliance is misplaced. Shareholders' proportionate voting rights changed because some shareholders took advantage of the offerings while others did not. Thus, some shareholders ended up owning a larger share of either the NUV or NPI fund because they exercised their rights to purchase new shares; shareholders who did not exercise their rights saw their ownership and voting interests decline. Defendants did not cause the change in proportional ownership; if all the Nuveen funds' shareholders had participated in the offerings, their proportionate voting rights would have remained the same. Shareholders' individual responses to the offerings are irrelevant. Defendants' behavior was the same toward all shareholders. *Cf. Alleghany Corp. v. Breswick & Co.,* 353 U.S. 151, 160, 77 S.Ct. 763, 769, 1 L.Ed.2d 726 (1957) (common stockholders had standing to bring a direct suit when corporation issued convertible preferred stock because "the threatened 'dilution' of the equity of the common stockholders provided sufficient financial interest"); *Lochhead v. Alacano,* 697 F.Supp. 406, 411–13 (D.Utah 1988) (minority shareholder had standing to bring a direct suit when corporate directors, officers and majority shareholders approved a stock option plan that disproportionately benefited them).

Plaintiffs also argue that there is no harm to the Nuveen funds, noting that the Nuveen funds' aggregate assets substantially increased as a result of the offerings, even after Nuveen's and Nuveen Advisory's fees were deducted. Resp. at 18. The increase in the total value of the Nuveen funds is inapposite. Plaintiffs' suit is basically a claim for diminution of the value of the Nuveen funds' shares. Plaintiffs' claim that the shareholders suffered because the value of each of their shares decreased means the Nuveen funds themselves suffered because the value of their shares decreased. It is irrelevant that the decrease in the value of

each share coincided with an increase in the total assets in each fund.

Defendants are correct that plaintiffs have improperly brought a direct action instead of a derivative one. The complaint must be dismissed, and defendants' other arguments need not be addressed.

## *CONCLUSION*

Defendants' motion to dismiss is granted. This action is dismissed without prejudice.