## FRANK H. JACOBSON AND ANOTHER v. GEORGE W. BARNES.[1]

December 7, 1928.

No. 26,853.

[1]Reported in 222 N. W. 341.

See note in 12 A. L. R. 1070; 45 A. L. R. 795.
See note in 26 L. R. A. 52 et seq; 6 R. C. L. 834; 2 R. C. L. Supp. 217;
    4 R. C. L. Supp. 443; 5 R. C. L. Supp. 371; 6 R. C. L. Supp. 412.

*H. E. Fryberger* and *Elof J. Carlson*, for appellants.
*Einar Hoidale* and *Edward Nelson*, for respondent.

STONE, J.

Action by Frank H. Jacobson against George W. Barnes. Plaintiff's wife, Lillian M. Jacobson, has been impleaded by order of court and may be considered as a coplaintiff, but for convenience we shall refer to the husband as though he were the only plaintiff. Judgment went for defendant, and plaintiffs appeal.

Plaintiff's case is for the breach of an alleged contract made by him with defendant for the purchase by them of the Pioneer Life Company for $7,500, $3,500 of which was to be advanced by plaintiff. He alleges the agreement was that he should leave his then position with another insurance company and become the secretary of the

new company, the name of which was changed to Sterling Insurance Company; and that defendant bound himself to procure plaintiff "permanent employment" as the secretary of the new company at a salary of at least $300 per month. The purchase was made, and plaintiff did advance $3,500 of the money used for that purpose. Plaintiff was elected secretary of the corporation, but the venture was not a success. After serving for a short time, he resigned. He then demanded of the Sterling Insurance Company not only the arrears of salary, but also the $3,500 which he had advanced for its purchase. He sued on that demand but was unsuccessful. This action against the present defendant followed. There is no allegation or proof that defendant received or has had the benefit of any of plaintiff's money.

Much of the argument for plaintiff sounds in fraud. But the complaint states no such cause of action. It declares expressly and only upon a violation and breach by defendant of his "various representations and agreements" set out as constituting the alleged contract. Defendant denied making it, and the resulting issue was submitted as a special issue to a jury, which resolved it for plaintiff, giving him a verdict as for breach of contract by defendant. A motion was made to set aside the verdict. Additional evidence was taken upon other issues which had been reserved for the court. There followed findings of fact, conclusions of law and an order for judgment, which included an order setting aside the verdict. Upon the findings so made judgment was ordered for defendant.

■ We shall dispose first of an issue arising under defendant's counterclaim. He had conveyed certain property to plaintiff, and the counterclaim asked to have the conveyance declared a mortgage. Upon that issue defendant prevailed. Judgment was ordered in his favor to the effect that the conveyance in question was in fact a mortgage; that the debt secured thereby has been paid, and accordingly that defendant should be reinvested with the title. That phase of the case presents nothing more than a fact issue, and there is ample evidence to sustain the decision below. The testimony of defendant that the conveyance was in fact a mortgage is

unequivocal and finds some corroboration by plaintiff himself. The issue being clearly one of fact and the finding well sustained by the evidence, nothing can be gained by further discussion of it.

■ The decision below was that plaintiff's alleged contract with defendant was against public policy and therefore void. The plan, according to the testimony of plaintiff himself, was that by the purchase of the new insurance company he and defendant would get "control of it;" that defendant would "take the presidency" and he become the secretary; that defendant "guaranteed" all this, and in addition that plaintiff would remain the secretary of the new company permanently at a salary of not less than $3,600. The insurance company to be purchased appears to have been a mutual and therefore controlled by its policy-holders. So the supposed contract could have been performed by defendant only through his ability and willingness to control corporate action for plaintiff's benefit without regard to the interests of policy-holders. Defendant could have no such control except through his influence with the policy-holders or directors or because of his own power as director or officer. The agreement was neither for the benefit of the corporation or all its members, nor consented to by the latter. If such were the case a different rule might apply. 13 C. J. 419; Lorillard v. Clyde, 86 N. Y. 384; Keady v. United Rys. Co. 57 Or. 325, 100 P. 658, 108 P. 197; Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 A. S. R. 436; Venner v. Chicago City Ry. Co. 258 Ill. 523, 101 N. E. 949. Whatever the rule of such cases, it is against public policy and so illegal for one owing to a corporation the duty of officer or director to hamper his action in corporate affairs by contracting in advance that such action shall be for the benefit of any individual or interest other than the corporation itself. If defendant agreed as plaintiff claims, he did so as a prospective member and officer (the president) of the corporation. That such an agreement is illegal and void as against public policy is settled law. Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060. There is no present occasion for adding to the discussion contained in that decision. It matters

not that a particular contract of a condemned class may be innocent of wrongful intent or effect. "The law looks to the general tendency" of the contracts it forbids. "The vice is in the very nature of the contract, and it is condemned as belonging to a class which the law will not tolerate." Richardson v. Crandall, 48 N. Y. 348, 362, quoted with approval in McMullen v. Hoffman, 174 U. S. 639, 648, 19 S. Ct. 839, 43 L. ed. 1117.

Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, disposes also of the proposition that such an agreement can be validated by any acts of the parties in recognition of its validity or that there can be any estoppel barring one party to such an agreement from asserting its invalidity because the other has parted with property or rendered services in reliance upon it. Where such invalidity appears it is the duty of the court itself to assert it and deny relief even though the parties themselves do not raise the question by pleading or otherwise. Goodrich v. Northwestern Tel. Exch. Co. 161 Minn. 106, 201 N. W. 290, and cases cited. All else aside, a contract being declared upon, it is but logical to allow proof of illegality under a general denial, for such proof simply shows no contract.

■ An argument for plaintiff is that if there was any illegality in the transaction "it was not in the foundation of the agreement but * * * collateral" thereto. The proposition is put upon the authority of McBlair v. Gibbes, 17 How. 232, 15 L. ed. 132, and Brooks v. Martin, 2 Wall. 70, 17 L. ed. 732. The contention finds no basis in the facts. Plaintiff's cause of action is for breach of express contract and does not rest upon any quasi contractual obligation of the defendant to restore to plaintiff money or other value gotten from him by illegal means. There is no suggestion that defendant has enriched himself at plaintiff's expense. A principal and essential condition of an express and entire contract is declared upon; and, there being another equally plain condition of it which renders the whole illegal, plaintiff is without remedy. The cause of action which he asserts is not founded on anything collateral to the contract but directly upon the very terms of the agreement itself.

In McBlair v. Gibbes, 17 How. 232, 15 L. ed. 132, recovery was allowed of a fund growing out of an illegal transaction but assigned for an independent and meritorious consideration, wholly disconnected with the illegality of the original transaction, to a plaintiff who himself was innocent and wholly disconnected with and free from the taint of the illegality. So there is not much justification for citing that case to sustain the present effort to recover damages for the breach of a condition of an illegal contract. In Brooks v. Martin, 2 Wall. 70, 17 L. ed. 732, there was a recovery by one of the partners in an illegal transaction of an interest in the proceeds which had been converted into lands, money and securities. There was an element of unconscionable enrichment of the defendant at the expense of the plaintiff, and that case is easily distinguishable from this, which proceeds directly upon the contract itself. Furthermore, Brooks v. Martin, 2 Wall. 70, 17 L. ed. 732, was limited and much restricted as a precedent in McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. ed. 1117. That was an action for an accounting of the profits of a partnership in a building contract. The partners were general contractors who had agreed secretly to pool their interests and put in bids, known to each other, for certain public work, the higher bid being fictitious and only for the purpose of creating an appearance of competition where in fact there was none. Naturally, this portion of the agreement was not in writing. The court held [19 S. Ct. 840] that "a part of the contract being shown, the remainder may be; and, its illegality appearing, the court will neither recognize nor enforce any part of it, but will leave the parties as it finds them."

That disposes not only of the argument that the illegality of the contract alleged by plaintiff was so far collateral in its origin as not to affect the whole, but also of the claim that there can be recovery upon the theory of account stated. An agreement, contractual in form and purpose but illegal, is not purged of its illegality by a mere subsequent promise to perform it. The disclosure of illegality is always and automatically fatal to an action directly on the condemned undertaking. "No consent of the defendant can

10

neutralize" that effect. Oscanyan v. W. R. Arms Co. 103 U. S. 261, 268, 26 L. ed. 539. The action being for breach of the agreement itself, it is not a case where "the express contract disappears * * * and the rule of implied liability takes its place." That was the situation in First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 366, 139 N. W. 599, 43 L.R.A.(N.S.) 84.

■ Another argument for plaintiff is that he was not in pari delicto with defendant. He claims there was a confidential relationship as a result of which plaintiff put special trust and confidence in defendant. That was an issue of fact now settled by an. express finding against plaintiff. But in the evidence we find nothing which could change the result. We may assume all that plaintiff claims by way of a fiduciary relationship and still be short of discovering anything to enable him to escape the effects of the illegality of his contract. If there had been a fiduciary relationship as a result or incident of which defendant had enriched himself unconscionably at plaintiff's expense, there might be a recovery in quasi contract even if no action would lie on the real agreement or for its breach. There are here no such circumstances as "imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like, as a means of inducing the party to enter into the agreement, or of procuring him to execute and perform it after it had been voluntarily entered into" or of an agreement "intrinsically unequal" and "of such a nature that one party is necessarily innocent as compared with the other," so that he is in a position "essentially less illegal and blameworthy than those of the others." It takes such elements to enable a party to an illegal contract to recover upon the theory that he is not in pari delicto with his adversary. 2 Pomeroy, Eq. Jur. §§ 940-942.

An illustrative case is Ford v. Harrington, 16 N. Y. 285, where property had been conveyed from client to attorney upon the advice of the latter for the purpose of defrauding the creditors of the former. It was held that the contract could be rescinded, notwithstanding that the client was a party to the fraud, upon the ground that the parties were not in pari delicto and that an attorney is prohibited from obtaining an advantage from such a transaction

with his client. See also Barnes v. Brown, 32 Mich. 146, 153. So also a client was held not to be in pari delicto with his attorney in Belding v. Smythe, 138 Mass. 530, 533, the court saying: "The defendant is an attorney at law, and, in dealing in this manner with one whom he makes his client, the parties are not regarded as in pari delicto." But under a contract between a layman and a lawyer whereby the former in consideration of a share of the fees agrees to solicit cases for the attorney, the parties are in pari delicto. Holland · v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A.(N.S.) 510, 17 Ann. Cas. 687. This record discloses no fact upon which can be based the conclusion that plaintiff was not in pari delicto with defendant in respect to the making of the agreement which is the very basis of plaintiff's cause of action.

Judgment affirmed.

