EZEKIEL RAY AND ANOTHER v. HOMEWOOD
HOSPITAL, INC. AND OTHERS.[1]

April 11, 1947.

No. 34,404.

---

[1]Reported in 27 N. W. (2d) 409.

*Henry G. Young* and *Samuel A. Warren,* for appellants.
*Jay W. Smith* and *T. M. Thomson,* for respondents.

MATSON, JUSTICE.

Plaintiffs appeal from an order denying their motion for a new trial.

According to the allegations of the complaint, plaintiffs, Ezekiel and Myrtle M. Ray, together with the defendants Harold I. and Veronica Davidson, in December 1941 purchased from the defendant Raymond T. Rascop the building and grounds theretofore used in the operation of the Homewood Hospital. Shortly thereafter, the Rays and the Davidsons, as the sole incorporators, organized a corporation known as Homewood Hospital, Inc., for the operation of "a public hospital, as an institution of public charity, and not for profit." The articles of incorporation specified that the corporate management should be vested in a board of trustees composed of not less than three and not more than 15 members selected from and by the members of the corporation, subject to the proviso, however, that the incorporators should constitute the first board of trustees and that Ezekiel Ray and Harold Davidson were to be president and secretary-treasurer respectively. At and immediately prior to the actual incorporation, the incorporators mutually agreed that they (the Rays and the Davidsons) *"were to exclusively control and operate*

*the hospital"* (italics supplied) on an equal-interest basis and that, in addition to the aforesaid allotment of the corporate offices, Mrs. Ray was to serve as hospital superintendent and Mr. Davidson as orderly on an equal-salary basis.

Rascop, from whom the hospital property had been purchased, *also owned and still owns and operates the Glenwood Hills Hospital.* The two hospitals have coöperated in the exchange of certain patients, and in the furtherance of this practice Rascop suggested that it might be advisable to enlarge the Homewood Hospital's board of trustees to permit him and his accountant, defendant Joseph Shefner, to serve thereon for the purpose of correlating the work of the two institutions more closely. Acting on this suggestion, the incorporators (the Rays and the Davidsons) entered into an agreement with Rascop and Shefner whereby the latter "would serve on the board of trustees of defendant corporation *but would take no part in the management of the affairs of the hospital."* (Italics supplied.) In reliance upon the assurance that Rascop and Shefner would not as trustees participate in the management of the hospital, plaintiffs agreed to, and participated in, the election to the board of Rascop, Shefner, and also one Stasel, *although these three were not in fact members of the corporation.* Plaintiffs allege that neither they nor the Davidsons realized at the time that only corporate members could be elected as trustees. It is asserted that such nonmember trustees are trustees in name only and are acting illegally and not in good faith. It is further alleged that Rascop, through trumped-up and fictitious difficulties, subsequently estranged the Davidsons from plaintiffs, and that thereafter Rascop, in furtherance of his personal designs upon the Homewood Hospital business and property, together with the Davidsons, Shefner, and Stasel, conspired to deprive plaintiffs of their full right to participate in the management of defendant corporation (in violation of the agreement among the incorporators) and to deprive them of the full use and enjoyment of their vested property rights in the corporate enterprise. Pursuant to this alleged conspiracy, the defendant trustees ousted Mrs. Ray as superintendent and as trustee and replaced Ezekiel

Ray with Stasel as president. Plaintiffs allege that prior to this change in management the corporation had prospered and accumulated $8,000 in cash, and that they, plaintiffs, believe that this financial prosperity has caused Rascop and Shefner to desire and to conspire to obtain control of the corporation and to oust plaintiffs, with the eventual objective of also ousting the Davidsons. Plaintiffs further allege on belief that, *although the corporation has been and now is financially responsible,* if the defendants are allowed to continue in control they will take over all the corporate offices, pay themselves immense salaries, and thereby ruin the corporation and defeat its purposes. Plaintiffs also assert that the change in management has been followed by a decrease in the number of patients, and that if the defendants are permitted to continue their control the staff doctors will withdraw their support and the corporation will become insolvent. In their prayer for relief, plaintiffs among other things demand (1) that the defendant trustees be enjoined from acting as such; (2) that an accounting be had; (3) that a receiver be appointed to manage the corporation until it be dissolved and its assets distributed; and (4) that if the court will not order a dissolution of the corporation it order the removal of the present trustees and the holding of an election to fill the resulting vacancies. It is upon the foregoing complaint that the trial court, at the opening of the hearing, by its order sustained an objection to the introduction of any evidence on the ground that no cause of action had been stated, and ordered the action dismissed. From an order denying a new trial, plaintiffs appeal.

Aside from the speculative nature of the allegations of the complaint taken as a whole and the fact that the action is primarily one to adjudicate the right of certain trustees to hold their corporate offices and that the proper remedy therefor is by a proceeding in quo warranto (Dennistoun v. Davis, 179 Minn. 373, 229 N. W. 353[2]), we have as the very foundation of this action a bargain tainted

[2]See, State ex rel. Benson v. Kylmanen, 181 Minn. 281, 232 N. W. 262; 5 Fletcher, Cyc. Corp. (Perm. ed.) § 2335; Spellman, Corporate Directors, § 85; 5 Dunnell, Dig. & Supp. § 8065.

with illegality, namely, the agreement between the incorporators and Rascop and Shefner to the effect that if the latter were elected to the board of trustees they *"would take no part in the management of the affairs of the hospital."* (Italics supplied.) The trustees of a charitable corporation, as members of its managing body, are charged with the same fidelity in the performance of functional duty as the directors of a private business corporation. Spellman, Corporate Directors, § 6. In the eyes of the law, there is no such thing as a *dummy* or *nominal* board of directors. The law confines the business management of a corporation to its directors, and they are vested with a fiduciary responsibility to administer its affairs. As such, they are charged with the duty to act for the corporation according to their best judgment, and in so doing they cannot be controlled in the reasonable exercise and performance of such duty. Directors may not agree to exercise their official duties for the benefit of any individual or interest other than the corporation itself (Jacobson v. Barnes, 176 Minn. 4, 222 N. W. 341), and an agreement by which individual directors, or the entire board, abdicate or bargain away in advance the judgment which the law contemplates they shall exercise over the affairs of the corporation is contrary to public policy and void. Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060. They may not agree to abstain from discharging their fiduciary duty to participate actively and fully in the management of corporate affairs. The law does not permit the creation of a sterilized board of directors. Manson v. Curtis, 223 N. Y. 313, 119 N. E. 559, Ann. Cas. 1918E, 247.

"A bargain by an official or shareholder of a corporation for a consideration enuring to him personally to exercise or promise to exercise his powers in the management of the corporation in a particular way is illegal." Restatement, Contracts, § 569.

In the instant case, the incorporators obviously sought an advantage which would inure to them personally when they specifically stipulated for the election of certain dummy directors in order to insure for the future the exclusive management of the corporation

by themselves. It also appears that they thereby sought as individuals to retain the possession of certain corporate offices and employment. Rascop and Shefner, on the other hand, in agreeing in advance that as directors they would refrain from taking part in the managerial duties of the board, obviously did so to promote the interest of the Glenwood Hills Hospital and through it their own personal advantage. The good faith or intention of the parties in entering into such an agreement does not purge it of its illegality. Jacobson v. Barnes, 176 Minn. 4, 222 N. W. 341; 2 Fletcher, Cyc. Corp. (Perm. ed.) § 281.

■ As an exception to the general rule that this court will not for the first time on appeal consider a theory that was not litigated below, we held in Hart v. Bell, 222 Minn. 69, 74, 23 N. W. (2d) 375, 378, that:

"* * * this court has a duty to, and upon its own motion may, consider and determine a case upon the ground of illegality, although such ground was neither presented to nor considered by the trial court, if such illegality (a) is apparent upon undisputed facts, (b) is in clear contravention of public policy, and (c) if a decision thereon will be decisive of the entire controversy on its merits."

The foregoing three-phase test is clearly applicable to the instant case.

The order of the trial court is affirmed.

Affirmed.