Hast, J.
The issue in this case as stated by the trial court is:
“Was Satla organized as a going concern with power to engage in business according to its general ‘purposes’ article or was it organized only as a medium to liquidate the remaining assets of Atlas?”
The question as more specifically stated by the appellants is :
“Where an insolvent Ohio building and loan company is in voluntary liquidation under the supervision of the Common Pleas Court pursuant to Section 8623-85 and the directors of the company devise a plan which, after notice to all of the creditors and shareholders, is approved by the court and, as provided in the plan, fhe liquidating corporation transfers its assets to a new corporation in exchange for all of the shares of the new corporation and all of the creditors and shareholders of the liquidating corporation who can be located accept such shares in full of their claims against the liquidating corporation, does the new cor *553 poration hold said assets in trust for the purpose of continuing the liquidation thereof, reducing them to cash and then distributing the proceeds to these shareholders of the new corporation who formerly were creditors of the old corporation, or on the contrary, does the new corporation hold such assets with the same rights and powers with respect thereto as corporations generally can exercise?”
As a preliminary to a final determination of the question presented, it will be profitable to describe and evaluate the corporate and capital structure of Satla, in the light of what was actually done in creating it.
Considering the plan of reorganization as proposed and as described in the application therefor, above referred to, and as later modified by the decree of the court approving such application, we find specific facts as follows:
At the time of the filing of the certificate of dissolution of Atlas, there were issued and outstanding 4,056 shares of the common capital stock of that corporation of the par value of $100 per share. By the reorganization, this capital structure was changed and the shareholders were issued one share of a par value of $1 in Satla for each 20 shares of the par value of $100 per share in Atlas, or a total of 202.8 shares.
At the time of the filing of the application for dissolution of Atlas, there were approximately 4,102 depositors in that institution each holding claims against it in a sum of $50 or less, a total of approximately $41,650, leaving 1,689 depositors each with claims in excess of $50. Satla negotiated a loan, secured by the pledging of assets, with which it paid off the depositors, each of whom held deposit claims of $50 or less. Under the plan there were issued to the 1,689 depositors, each having deposit claims in excess of $50, one share of the capital stock of Satla, having a par value of $1 per *554 share, for each $20 of the remaining and unpaid deposit claims. There were issued to such 1,689 depositors a total of approximately 41,000 shares of such capital stock.
Clearly, under this arrangement, depositors of Atlas surrendered their depositor claims against Atlas in consideration for the issuance to them of the stock in Satla to which the assets of Atlas had been transferred. The difference between the total par value ($1 per share) of the capital stock of Satla, which was treated by it as paid up stock, and the value of the assets transferred to Satla amounted to more than $1,300,000 less the actual debts of Satla for money borrowed to pay off in cash the depositor claims of $50 or less plus small expense items amounting to approximately $56,000. Such difference must necessarily be regarded and treated as paid in surplus, making the book value of the stock in Satla approximately $31 per share.
It is true that the original deposit accounts were carried on the books of Satla as a matter of record but not as debts of such corporation. This is conclusively shown by the fact that, as capital assets were sold and liquidated, dividends equal to such converted assets in amounts far beyond the earnings of the new company were declared on the stock and not as dividends on the deposit accounts. Clearly, also, under the new arrangement, the depositor shareholders could not have brought suit against Satla on their deposit claims, which fact is further evidence that the depositors had surrendered their deposit claims for stock in Satla.
It is true that, under the application for the transfer of assets to Satla under the order of the court, Satla was to assume the debts of Atlas but such assumption related to the remaining actual indebtedness of Atlas *555 plus a newly created indebtedness to pay off depositors having deposits of $50 or less in Atlas, and not to claims such as depositors accounts above $50 which had been liquidated by the issuance of stock in lieu thereof. Satla was not, nor was it intended that it should be, an insolvent institution at its inception. Otherwise, it would not differ from Atlas and there would have been no point in its organization.
The facts show also that Satla was from the beginning operated as a going concern — not simply as a liquidating trust — -and earned, aside from the sale of assets, between $90,000 and $100,000 annually.
Doubtless, a corporation could be organized with limited powers to act as a trustee only to carry on certain business or to liquidate an insolvent institution. However, in the instant case, the application, as well as the court decree, was silent as to what specific treatment or disposition the corporation to be formed was to make of the assets of Atlas to be transferred to it. The application and decree were silent also as to the proposed purpose clause or clauses of the new corporation. The application and decree made specific provision only as to the basis upon which stock of and deposit credits in Atlas should be exchanged for stock in the new corporation.
The “plan” as set forth in the application had as its objective the satisfaction of the claims of all parties having any interest in the liquidation of Atlas. The sole purpose and object of the organization of a new corporation and the transfer of all the assets of Atlas to it was to terminate the jurisdiction of the court in the liquidation of Atlas and to place the control of the property transferred in the hands of the shareholders and creditors of Atlas through the issuance of common stock to them in proportion to their interests in and claims against Atlas. The creditors of Atlas were issued, without restricted ownership, stock in the new *556 corporation, not certificates of participation as was done in the case of Shuster v. North American Mortgage Loan Co., 139 Ohio St., 315, 40 N. E. (2d), 130, where a corporation was organized as a trustee for the participation-certificate holders as beneficiaries of the trust. Likewise, a corporation might enter into a contract whereby its corporate activities could be limited to a trusteeship, but here there was no such contract.
As above stated, at the first meeting of the board of directors of Satla, the board, as it had a right to do, adopted a resolution to liquidate the assets of Satla as speedily as possible and for a time the affairs of the corporation were conducted along those lines. For instance, the accounting system carried under the term, “liabilities,” the amount of the depositor accounts as “participating accounts” rather than reflecting them in the capital account as investments in stock of the corporation. The audit reports show that, as liquidating payments were made to the shareholders of Satla, the “participating accounts” were reduced by the same amount pro rata until they were by that process entirely eliminated by the end of 1947. No charges for interest were ever added to this item in the financial statement, and none was ever credited as payments on these accounts.
After 1947, as assets of Satla were sold, the losses suffered or profits made from such sales were subtracted from or added to the reserve fund. During the period in question, many entries were carried on the books of the corporation, indicating that the transactions had to do with the liquidation of a closed savings and loan association. For instance, the minutes of a board meeting of the corporation show that a resolution was adopted declaring “a liquidating dividend of $2 per share on the stock of Satla Realty Corpora *557 tion, which, is equivalent to 10 per cent payment on the remaining balances in the passbooks of the old Atlas Savings and Loan Company.” In the tax returns of the corporation, these “liquidating” dividends were not set up as income on the stock, but were treated as though they were payments of obligations.
All this history of the activities of the corporation was admissible in evidence, not for establishing the limits of the powers of the corporation, but solely for the bearing which it had in the interpretation of such powers. After all, the board of directors of the corporation could not bind the action of future members of the board as to the policy or scope of the activities of the corporation. The corporation and its board of directors could clearly change the character and nature of the business of the corporation so long as the business was confined to the express or clearly implied purposes authorized in its charter.
The owners of a corporation are its shareholders, and they have the authority to elect successive directors to carry on the business and effectuate the policies of the corporation. If a board of directors can by resolution limit the scope of corporate activities for the future, it can thus wrest the effective control of the corporation from the shareholders. Concededly, no board of directors can thus usurp the power of control of the corporation vested by law in the shareholders.
It is elementary law that the purposes of a corporation and its powers with respect to those purposes are to be found in its charter granted to it by the state.
‘£ The actual character of a corporation is determined by the objects of its formation and the nature of its business as stated in the articles themselves. A corporation cannot be made one kind merely by labeling *558 it such if its declared objects and purposes show it to be something else.” 13 American Jurisprudence, 187, Section 37; People, ex rel. Nelson, County Collector, v. Rockford Masonic Temple Bldg. Assn., 348 Ill., 567, 181 N. E., 428, 83 A. L. R., 768.
Furthermore, the action of a board of directors determining the nature or scope of the business to be carried on by the corporation is not binding on future members of the board of the same corporation. Thomas v. Matthews, 94 Ohio St., 32, 113 N. E., 669; Ray v. Homewood Hospital Inc., 223 Minn., 440, 27 N. W. (2d), 409.
In 1950, more than two-thirds of the shareholders of Satla voted to amend the charter of the corporation so as to authorize the directors to engage in a mortgage-loan business. The courts have no jurisdiction to supplant that authority at the instance of a minority shareholder on the ground of illegal exercise of corporate power.
In accordance with -the views herein expressed, the judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.

Judgment reversed.

Middleton, Taet, Stewart and Lamneck, JJ., concur.